Joseph N. SELF, Appellant,

v.

The STATE of Texas, Appellee.

No. 1107–84.

Court of Criminal Appeals of Texas,
En Banc.

May 21, 1986.

David R. Weiner (court appointed on appeal only), San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty. and C.N. Rothe, Bruce Baxter and Edward F. Shaughnessy, III, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of murder, and the jury assessed punishment at 99 years' imprisonment.

On appeal the San Antonio Court of appeals interpreted appellant's sole ground of error as alleging that appellant's written confession was inadmissible due to his illegal warrantless arrest. That court overruled this contention and affirmed the judgment. *Self v. State*, 677 S.W.2d 781 (Tex. App.-San Antonio 1984). Appellant's petition for discretionary review was granted to determine the correctness of that decision.

Appellant was charged with the capital murder of Sai Shun Wong by shooting him with a gun in the course of a robbery. See V.T.C.A., Penal Code, § 19.03. The State abandoned the capital feature of the indictment and appellant entered a plea of not guilty to the lesser included offense of murder. The jury convicted appellant as a party to the offense of murder.

The record shows that on the afternoon of August 6, 1982, two men entered the Chung Sun Grocery Market at 1230 East Durango Street in San Antonio. In the events that followed, Johnny Wong, age 54, owner of the store, was shot in the head with a small caliber weapon by one of the men. He was left dazed and dizzy. His father, Sai Shun Wong, age 77, was shot and killed by the other man. Mae Sam, Johnny Wong's niece, left the store during the incident. After the shooting both men fled from the store. Apparently no money was taken. Witnesses saw the two men leave the store and join a third man in an automobile parked nearby. As a result of obtaining the number on the dealer's plates on the vehicle and other information the police were led to the co-defendant, James Williams. Williams gave a confession, identifying the other man who entered the store with him as "Joseph." He pointed out the house on Potomac[1] Street where "Joseph" lived or frequented, and gave a physical description of "Joseph" to the officers. It appears that during the investigation the police learned appellant's surname. Continuing the investigation, San Antonio police detectives Lauderdale and Morris[2] proceeded on August 7, 1982, to the 900 block of Potomac and set up a surveillance four doors away from the address given them. Approximately an hour and a half later the detectives spotted a man walking west on Potomac fitting the physical description given and wearing tennis shoes that they had been told the suspect would be wearing. When asked, the man identified himself as Joseph Self. The officers then read to the appellant his *Miranda* rights.[3] Appellant was handcuffed and taken to the homicide office. Lauderdale and Morris returned to their regular assignments. See footnote #2. At the police station, after being given the *Miranda* warnings twice by Detective Edward Pinch-

---

1. The Court of Appeals' opinion refers to the street as "Pontiac Street," which is apparently a misreading of the record.

2. Detective Lauderdale was a member of the Burglary Division and Detective Morris was assigned to the Theft Bureau of the San Antonio Police Department and normally did not work together. They were temporarily assigned to "Homicide" to assist in the investigation.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

back, appellant gave a written confession that he and Williams had entered the Chung Sun grocery the day before and that he had shot the man who came from the meat counter (later shown to be Johnny Wong) and then Williams shot the other man (later shown to be the deceased).

After indictment the appellant filed a pre-trial motion to suppress the confession. The trial court, in response thereto, conducted a pre-trial *Jackson v. Denno*[4] or Article 38.22, V.A.C.C.P., hearing to determine the voluntariness and admissibility of the statement.

Detectives Lauderdale and Morris testified to their arrest of appellant and the giving of the *Miranda* warnings. Such testimony · showed a warrantless arrest. Detective Pinchback testified that he again at the police station read appellant his *Miranda* rights at 2:55 p.m. on August 7th and that he orally interviewed appellant for about 20 minutes. At first appellant denied the offense, but after two or three minutes he then stated to Pinchback, "Let me stop bullshitting and tell the truth." Appellant then revealed his part in the offense. Pinchback then gave appellant his *Miranda* warnings again before taking a written statement about 3:05 or 3:30 p.m. Pinchback testified that appellant gave the statement freely and voluntarily, that he understood his rights and did not invoke them. He denied that he physically or verbally abused appellant or made any promises or offers of leniency; that appellant read the written statement which included the *Miranda* warnings, and noted one mistake and corrected it, and agreed to another correction called to his attention by Pinchback. The confession was signed in the presence of two witnesses. The written statement was taken a little over two hours after appellant's warrantless arrest.

The 24-year-old appellant, who had finished high school, testified about his arrest. While walking on Potomac Street he was stopped and asked his name and for identification and then handcuffed. He stated he was surprised and scared at "that time."

He denied to the officers he was involved in a robbery in which someone was killed. He said the officers said if he helped them, they would help him. He was turned over to Detective Pinchback at the police station. Appellant testified he was in a new situation, was scared and nervous, that he was told the officers knew what he was wearing at the time of the offense, etc. At one point during the hearing he told his counsel he knew he had a choice about making a statement, and at another point he related he didn't have a choice as the officers appeared angry and he had heard about defendants getting beaten. He did not testify that he was threatened or beaten, or that he did not understand his rights, or that he invoked his rights and that they were violated. He did recall Lauderdale and Morris had offered to help if he cooperated, though there was no showing of any effort by the arresting officers to take a statement. These officers were recalled and rebutted appellant's testimony about offers of help. Pinchback rebutted other portions of appellant's testimony.

At the conclusion of the hearing the court found that the written confession was voluntary and admissible into evidence. Among its findings the court found that appellant was arrested without a warrant, that the arrest was not justified by Chapter 14 of the Texas Code of Criminal Procedure, that probable cause, however, existed for his arrest, that the appellant was given and understood his rights under *Miranda* and Article 38.22, § 2(a), V.A.C. C.P., that he did not request the assistance of a lawyer, was promised nothing as inducement to give the statement, nor threatened or forced to give or sign the statement, and that the police conduct was neither purposeful nor flagrant.

■ Thus the trial court found that appellant was warned of his constitutional rights and concluded that the appellant thereafter gave the incriminating statement voluntarily. Because the trial court is the sole trier of facts at the hearing to

**4.** *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

determine the voluntariness and admissibility, this Court is not at liberty to disturb any finding which is supported by the record. *McKittrick v. State*, 541 S.W.2d 177 (Tex.Cr.App.1976); *Green v. State*, 615 S.W.2d 700, 707 (Tex.Cr.App.1981); *Coleman v. State*, 643 S.W.2d 947, 948 (Tex.Cr. App.1983). We accordingly defer to those determinations.

Appellant nevertheless argues that his warrantless arrest was illegal and that the confession, being the fruit of the illegal arrest, should have been excluded at trial.

It is undisputed that the arrest was without a warrant and the trial court so found. The trial court further found that the police did have probable cause for the arrest on Potomac Street, and in this the court is supported by the record. See *Lewis v. State*, 598 S.W.2d 280 (Tex.Cr.App.1980). There does not appear to be a federal constitutional violation under the circumstances here presented. See *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), and cases there cited.

Appellant argues, however, that the warrantless arrest was illegal under Chapter 14 of the Texas Code of Criminal Procedure in that no exigent circumstances existed to relieve the officers of their statutory duty to obtain a warrant before arresting him, and the State failed in its burden to show the arrest was within an exception to the warrant requirement. See *Honeycutt v. State*, 499 S.W.2d 662 (Tex.Cr.App.1973); *Wilson v. State*, 621 S.W.2d 799 (Tex.Cr. App.1981).

■ Articles 14.01 through Article 14.04, V.A.C.C.P., prescribed the only situations in which a peace officer may arrest without a warrant. The Court of Appeals agreed with appellant that the warrantless arrest was unlawful under Chapter 14 of the Texas Code of Criminal Procedure and particularly pointed out that the requirements of Article 14.04, V.A.C.C.P., were not met.[5]

We are in accord with the Court of Appeals on this matter.

Article 38.23, V.A.C.C.P., provides in part that evidence obtained "in violation of any provision of the Constitution or law of the State of Texas" should be excluded. This is the Texas exclusionary rule.

What analysis are we to follow to determine whether appellant's confession was the fruit of his illegal warrantless arrest in violation of Chapter 14 of the Texas Code of Criminal Procedure? Since there were no federal constitutional violations here involved, we are not bound to follow the analysis in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). See *Duncan v. State*, 639 S.W.2d 314, 318 (Tex. Cr.App.1982). Only recently, however, in *Bell v. State*, 707 S.W.2d 52 (Tex.Cr.App. 1986), this Court adopted the *Brown* analysis or test to be applied to violations of Article 14.01 through 14.04, supra, and that test will be applied here.

In *Brown*, supra, the defendant was illegally arrested and taken to a police station where, after being given the *Miranda* warnings, he made incriminating statements concerning a murder for which he was subsequently convicted. The United States Supreme Court held that the *Miranda* warnings alone were insufficient to attenuate the taint of an arrest in violation of the Fourth Amendment. The court was careful to differentiate between the *Miranda* warnings which are a procedural safeguard employed to protect Fifth Amendment rights against the compulsion inherent in custodial surroundings, and the exclusionary rule as utilized to effectuate the interests of the Fourth Amendment. In *Brown*, the Court wrote:

"Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subse-

---

5. Article 14.04, supra, provides:
    "Where it is shown by satisfactory proof to a peace officer upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

quent thereto, to be broken *Wong Sun* [*v. U.S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)] requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' [371 U.S. 471 at 486, 83 S.Ct. 407 at 416, 9 L.Ed.2d 441]. *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment."

In determining whether a confession given following an illegal arrest is sufficiently attenuated to permit the use of the confession at trial the Supreme Court identified the following factors to be considered in making this determination:

(1) whether *Miranda* warnings were given;

(2) the temporal proximity of the arrest and the confession;

(3) the presence of intervening circumstances; and

(4) the purpose and flagrancy of the official misconduct.

*Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982). See also *Green v. State,* 615 S.W.2d 700 (Tex.Cr.App.1980), cert. den. 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981).

In the case at bar the appellant was given the *Miranda* warnings three times prior to giving the confession, and these warnings were also on the statement which the appellant read, corrected and signed. It was not challenged that he understood his rights, did not invoke them, and in fact, waived them. In *Brown* the Supreme Court held, however, that *Miranda* warnings alone were insufficient standing alone to attenuate the taint of an arrest in viola-

tion of the Fourth Amendment.[6] Though not the only factor, the Court made clear that *Miranda* warnings, however, are an important factor, in determining whether the confession was obtained by exploitation of an illegal arrest. 422 U.S. at 603, 95 S.Ct. at 2261. See also *Taylor v. Alabama,* 457 U.S. 687, 690, 102 S.Ct. 2664, 2666, 73 L.Ed.2d 314, 319 (1982).

With regard to the second factor, it appears that from the time the appellant Self was arrested until the time of his written confession approximately two hours lapsed.[7] Justice Stevens, concurring in *Dunaway,* concluded the temporal relationship between the arrest and the confession may be an ambiguous factor. 442 U.S. at 218, 99 S.Ct. at 2260. And only recently in *Bell v. State,* 707 S.W.2d 52 (Tex.Cr.App. 1986), this Court wrote: "The second element, temporal proximity of the arrest and the confession, is generally not a strong determining factor per se, . . . ." Nevertheless, the time factor clearly falls on appellant's side of the ledger on the question of taint.

With regard to the third factor, we find that after the *Miranda* warnings, there were no intervening circumstances. The appellant was not taken before a magistrate after his warrantless arrest. See Articles 14.06 and 15.17, V.A.C.C.P. It is well established that failure to take an accused before a magistrate does not in itself invalidate a confession unless such failure, in some manner, causes or contributes to bringing about the confession. *Goleman v. State,* 247 S.W.2d 119 (Tex.Cr.App.1952), cert. den. 344 U.S. 847, 73 S.Ct. 60, 97 L.Ed. 659, reh. den. 344 U.S. 882, 73 S.Ct. 174, 97 L.Ed.2d 683; *Creswell v. State,* 387 S.W.2d 887 (Tex.Cr.App.1965), cert. den. 382 U.S. 866, 86 S.Ct. 137, 15 L.Ed.2d 105; *Dugger v. State,* 402 S.W.2d 178 (Tex.Cr. App.1966); *Hughes v. State,* 409 S.W.2d

---

**6.** In *Brown* the Supreme Court concluded:
  "We emphasize that our holding is a limited one. We decide only that the Illinois courts were in error in assuming that the *Miranda* warnings, by themselves, under *Wong Sun* [371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441

(1963)] always purge the taint of an illegal arrest."

**7.** This is roughly the time span in *Brown* and *Dunaway* and in our case of *Green.*

416 (Tex.Cr.App.1966); *Black v. State*, 432 S.W.2d 951 (Tex.Cr.App.1968); *Schultz v. State*, 510 S.W.2d 940 (Tex.Cr.App.1974); *Short v. State*, 511 S.W.2d 288 (Tex.Cr. App.1974), cert. den. 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402; *Hester v. State*, 544 S.W.2d 129 (Tex.Cr.App.1976); *Myre v. State*, 545 S.W.2d 820 (Tex.Cr.App.1977); *Waller v. State*, 648 S.W.2d 308 (Tex.Cr. App.1983). See also *Cobbs v. State*, 495 S.W.2d 900 (Tex.Cr.App.1973).

■ Where a defendant is properly warned of his rights by the person taking a confession, failure to take the defendant before a magistrate and warn him of his rights before taking the confession does not invalidate the confession. *Easley v. State*, 454 S.W.2d 758 (Tex.Cr.App.1970); *Dunlop v. State*, 462 S.W.2d 591 (Tex.Cr. App.1971).

In addition to failing to take appellant before a magistrate, it does not appear that before the confession was taken that the officers secured a warrant of arrest. Little or no testimony was elicited on this matter during the hearing on the motion to suppress.[8]

The third factor likewise appears to fall on appellant's side of the ledger.

The fourth factor is the purpose and flagrancy of the official misconduct. Both the trial court and the Court of Appeals found the police conduct in the instant case was neither purposeful nor flagrant. In *Brown* it is observed that the Supreme Court, after noting the *Miranda* warnings were not the only factor to be considered, wrote:

> "The temporal proximity of the arrest and the confession, the presence of intervening circumstances ... and, *particularly,* the purpose and flagrancy of the official misconduct are all relevant. See *Wong Sun v. United States*, 371 U.S., at 491, 83 S.Ct. at 419." (Emphasis added.)

The importance of the fourth factor is clearly indicated.

The instant case is a far cry from the fact situations in *Brown, Dunaway, Taylor,* and in our case of *Green.* The arrest here was warrantless, but it was with probable cause. There was no probable cause in the other mentioned cases. *Brown* is an example of flagrant police conduct. The arrest there was made solely on the basis of an unsubstantiated tip which identified Brown only as an acquaintance of a murder victim. He was not a suspect at the time. The officer broke into Brown's apartment, searched it, and when Brown was climbing the stairs to his apartment, he was accosted by three plainclothes officers pointing guns at Brown. This was without warrant or probable cause. The officers later testified they arrested Brown for the purpose of questioning him as part of their murder investigation. He was arrested and taken to the police station, where he gave a confession. "The manner in which Brown's arrest was effected gives the appearance of having been calculated to cause surprise, fright and confusion." *Brown*, 422 U.S. at 606, 95 S.Ct. at 2262.

In *Taylor* the Court observed that "[T]his case is a virtual replica of both *Brown* and *Dunaway*. ... In this case as in *Dunaway* the police effectuated an investigatory arrest without probable cause based on an uncorroborated informant's tip, and involuntarily transported petitioner to the station for interrogation in the hope that something would turn up."

Without reiterating the facts of the instant case, the arrest here was with probable cause and it had no "quality of purposefulness." It was not an "expedition for evidence" admittedly undertaken "in the hope that something might turn up." *Brown*, 422 U.S. at 605, 95 S.Ct. at 2262.

---

**8.** The Court of Appeals in its opinion, *Self v. State*, 677 S.W.2d at 783, wrote: "Indeed, the testimony of James Herring, the officer in charge of the investigation, was that a magistrate was available that day to issue a warrant, but he did not think about securing one." Our reading of the record shows this testimony was from the hearing on the motion to suppress in the co-defendant Williams' case which was included in this record. It was not a part of the suppression hearing in appellant's case.

■ Like the Court of Appeals, we agree that the conduct of the officers was not in accordance with state law, and should not be condoned, but, under the circumstances, we conclude that the conduct did not rise to purposeful and flagrant conduct. The fourth factor must rest on the State's side of the ledger.

Justice Powell, concurring in *Brown*, referred to the factors as "the *general* factors." (Emphasis added.) Justice Rehnquist, dissenting in *Dunaway*, referred to the factors as the "several factors." And in its opinions the Supreme Court has never assigned equal weight to each of the factors to be considered in determining whether inculpatory statements were sufficiently a product of free will to be admissible under the Fourth Amendment. Given the deterrent purposes of the exclusionary rule of the Fourth Amendment and of Article 38.23, V.A.C.C.P., the fourth factor, the purpose and flagrancy of the police conduct, may be the most important factor of the four which the Court has never said were exclusive.

Further, it has been said:

"The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive." *Brown*, 422 U.S. at 603, 95 S.Ct. at 2261. "The 'question' of attenuation inevitably is largely a matter of degree' and thus application of the test is 'dependent upon the particular facts of each case.'" 3 La Fane, *Searches and Seizures*, § 11.4(a), p. 616 (1978). See also Comment, 31 U.Miami L.Rev. 615, 620 (1977).

■ In the instant case there was probable cause to arrest, there was no *unconstitutional* police conduct. The *Miranda* warnings were repeatedly given, an important factor, and nothing indicates the appellant's arrest was violent or designed to "cause surprise, fright and confusion."[9] Though improper and illegal, the conduct of the police was not purposeful and fla-

grant, a vital consideration. The confession was taken only about two hours after the warrantless arrest, and there were no intervening circumstances, but when all the factors are considered together, we conclude, although it is a close question, that the taint of the illegal arrest was overcome. The trial court did not err in admitting the confession into evidence. See *Coleman v. State*, 643 S.W.2d 947, 949 (Tex.Cr.App. 1982).

Even if it can be argued that the confession was inadmissible under the *Brown* list of factors, the State contends the admissibility of appellant's confession was harmless error beyond a reasonable doubt.

■ The test for harmless error, even where the error is constitutional, is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction or affected the punishment. *Johnson v. State*, 660 S.W.2d 536 (Tex.Cr.App.1983); *English v. State*, 647 S.W.2d 667 (Tex.Cr.App.1982); *Clemons v. State*, 605 S.W.2d 567, 571 (Tex.Cr.App. 1980); *Ford v. State*, 676 S.W.2d 609 (Tex. App.—Beaumont 1984). See also *Jordan v. State*, 576 S.W.2d 825, 829 (Tex.Cr.App. 1978); *Prior v. State*, 647 S.W.2d 956 (Tex. Cr.App.1983). A judgment will not be reversed for admission of evidence that did not injure the accused. *Guiterrez v. State*, 628 S.W.2d 57 (Tex.Cr.App.1982); *Prior v. State*, supra.

■ Mae Sam, granddaughter of the deceased and niece of Johnny Wong, identified appellant as the man who entered the store on the date in question in company with the co-defendant Williams. She testified that appellant went to the rear of the store where her uncle was before Williams shot and killed her grandfather. Johnny Wong identified appellant as the man who attacked him and shot him in the head during the incident in which his father was killed. Other witnesses described the two black men seen fleeing the store. Appel-

---

**9.** Appellant did testify he was "surprised," "nervous," etc., but there is nothing to indicate that the situation would have been different if arrest-

ing officers had had a valid arrest warrant actually in their hands at the time of arrest.

lant fit the description of one of the men and was arrested wearing the clothing described. At the penalty stage of the trial the appellant testified that he had talked Williams out of committing a robbery at the store, but then went with Williams to the store to purchase a few items. Appellant admitted that he was armed at the time because some "dudes" had been looking for him. At the rear of the store he claimed Johnny Wong attacked him and as they struggled Wong reached for a knife, and that he shot him (Wong) in the head. We conclude in light of the evidence that the test set forth in *Johnson,* supra, has been made, and the error, if any, was harmless error beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The judgment of the Court of Appeals is affirmed.

CLINTON, TEAGUE and MILLER, JJ., dissent.

WHITE, J., not participating.