Glenn JEFFERSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–88–00644–CR.

Court of Appeals of Texas,
San Antonio.

Jan. 31, 1990.

Mark Stevens, San Antonio, for appellant.

Fred G. Rodriguez, Fernando Ramos, Mary Kay Delavan, and Jay Brandon, Crim. Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and PEEPLES, J., and ONION *, Jr., Assigned J.

## OPINION

JOHN F. ONION, Jr., Assigned Justice.

This is an appeal from a conviction for murder where the jury assessed punishment at confinement in the Department of Corrections for fifty (50) years.

Appellant raises four points of error. In two, appellant contends the trial court erred in admitting his extrajudicial statement which was a product of custodial interrogation after an illegal arrest and a pretexual arrest. In his third point of error he complains the trial court erred in denying his mistrial motion following improper jury argument by the State, and in his fourth point he urges error occurred when the trial court gave a supplemental charge to the jury in violation of TEX. CODE CRIM.PROC.ANN. art. 36.16 (Vernon 1981) after the jury had reached a deadlock. The sufficiency of the evidence to sustain the conviction is not challenged.

Robert Charles Burns, Sr. failed to report for volunteer work at the San Antonio Chest Hospital on April 24, 1987. His co-

* Assigned to this case by the Chief Justice of the Supreme Court of Texas.

workers went to his apartment but received no answer in response to their knocking.

About 8:00 p.m. San Antonio Police Officer Rudy Garza was dispatched to the Matt Garcia Apartments at 6114 Pecan Valley Drive, to look for Burns. Officer Garza was able to enter Apartment 104 through a rear door which was damaged. The apartment was ransacked, and Burns' body was found inside with the feet and hands tied. The cause of death was later determined to be manual strangulation. An inventory determined that an electric shaver and stereo speakers were missing from the Burns' apartment.

Detectives Castenada and McGee lifted 14 latent finger and palm prints and placed them on cards. One of the cards contained two latent palmprints lifted from the outside patio window, another was lifted from the inside portion of the patio door in the area of the knob. Still another was a latent fingerprint lifted from a metal butter cookie can on a table inside the living area of the apartment.

Homicide Detective Henry Alonzo investigated at lest ten possible suspects without success. On June 12, 1987, Officer Jack Summey received a call from an informer who stated he had seen the Crime Stoppers program and that a "Glenn" who lived at the Timbers Apartments on Utopia Street was the suspect in the Burns' murder. Summey related his unsubstantiated tip from the unidentified informer to Detective Alonzo.

Alonzo went to the Timbers Apartments and asked the manager for any residents who were named "Glenn." He was given the name of "Glenn Jefferson." Back at the police station he discovered in the files a photograph and fingerprints for Glenn Jefferson. Officer S.O. Hartman, fingerprint expert, was able to match the Jefferson prints with the prints found at the Burns' apartment described above. Alonzo then checked for any outstanding warrants for Jefferson. He found two—one for driving while intoxicated and one for driving while license suspended. Alonzo and Detective Aguilar then went to Timber Apartments to serve such warrants on the appellant. They arrested him pursuant to the warrants and took him immediately to the Homicide Officer. After giving appellant the *Miranda* warnings, Alonzo for the first time mentioned the murder at the Matt Garcia Apartments and inquired if appellant knew the location. After about an hour appellant agreed to give a statement which was signed in the presence of two witnesses. The pertinent part of the statement read:

I want to say that I know where the apts. are that Det. Alonzo is talking about. They are right next to the Riviera Apts. on Pecan Valley Rd. I do not know anyone at those apts. and I have never been inside any of those apts. I have never been invited by anyone to go inside these apts.

After the statement was given Alonzo told the appellant he was a suspect and arrested him for murder.

Appellant's exculpatory statement contradicted by his prints at the scene of the murder were the principal pieces of the State's evidence against the appellant at the trial on the merits.

In his first point of error appellant urges that the in-custody statement followed an illegal arrest and was tainted thereby. He argues the arrest was warrantless and in violation of Chapter 14 of the Code of Criminal Procedure, the Fourth and Fourteenth Amendments to the United States Constitution, Article I, § 9 of the Texas Constitution and TEX.CODE CRIM.PROC. ANN. art. 38.23 (Vernon Supp.1989).

In his motion to suppress appellant advanced the same argument. At the evidentiary hearing on said motion and on the admissibility of the confession Detective Alonzo testified that after having obtained the outstanding arrest warrants for driving while intoxicated and driving while license suspended he proceeded to appellant's home with another officer. He did not try to obtain an arrest warrant for murder. He did not believe he had probable cause. Appellant was arrested inside his apartment by virtue of the traffic warrants and taken to the Homicide Office, being told he was in custody on the traffic warrants

only. At the police station appellant was read his *Miranda* [384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ] warnings and the Burns' murder was broached for the first time. Alonzo described the location of the Matt Garcia Apartments and inquired if appellant knew the location. Alonzo acknowledged all he wanted to do was to get appellant to state he had never been to the said apartment complex. Once appellant so stated the written statement was taken about an hour after the arrest. No other questions concerning the murder were asked. Once the statement was completed appellant was then informed he was a suspect and arrested for murder.

■ The State did not produce the traffic arrest warrants in response to the appellant's objection and claim that there was a warrantless arrest. While testifying at the evidentiary hearing Alonzo stated he did not have the warrants with him at the time. The hearing was continued but at its conclusion the court inquired of the State whether there was a problem in producing the warrants, and the prosecutor replied: "No, sir, we can do that as well." The inquiry related to well settled case law. When an accused objects to the admission of evidence on the ground that it is tainted by a warrantless arrest, and the State relies on an arrest warrant, then in absence of a waiver, reversible error will result unless the record reflects that the arrest warrant was exhibited to the trial court for its inspection and a determination of its sufficiency. *Miller v. State*, 736 S.W.2d 643, 648 (Tex.Crim.App.1987); *Gant v. State*, 649 S.W.2d 30, 32 (Tex.Crim.App. 1983), *cert. denied*, 464 U.S. 836, 104 S.Ct. 122, 78 L.Ed.2d 120 (1983). *See Oliver v. State*, 711 S.W.2d 442 (Tex.App.—Fort Worth 1986), 716 S.W.2d 742 (Tex.App.—

Fort Worth 1986, pet. ref'd) (opinion on rehearing); *Wilson v. State*, 722 S.W.2d 3 (Tex.App.—Dallas 1986, no pet.). We find no basis for waiver. *Oliver v. State* 716 S.W.2d 742 (Tex.App.—Fort Worth 1986, pet. ref'd).

■ After the selection of the jury and the reading of the indictment the court, in the jury's absence, ruled on the motion. The arrest warrants still had not been produced. The court found the statement voluntary and overruled the "Fifth Amendment objections" with regard to the "Fourth Amendment and *Brown v. Illinois* objections." The trial court found, since no warrants had been produced, that there had been a warrantless arrest in violation of Chapter 14 of the Texas Code of Criminal Procedure, but also found, that, contrary to the arguments of counsel for the State and defense alike, there was probable cause.[1] Although finding there was an illegal warrantless arrest in violation of said Chapter 14 the court also found that the reading of the *Miranda* rights, the time elements and no purposeful, flagrant conduct by the officer did in fact attenuate the taint of the illegal arrest. The statement was allowed into evidence with appellant repeating his objections at trial.

■ A confession or statement, otherwise shown to have been voluntary, is not rendered inadmissible by the fact its author was under arrest or in custody at the time even though the arrest may have been under invalid process or without any process or legal right absent a causal connection between invalid arrest and confession. *Barber v. State*, 737 S.W.2d 824, 831 (Tex. Crim.App.1987) and cases there cited.

**1.** The standards for determining whether there was probable cause to arrest without a warrant are at least as stringent as the standards required when a magistrate determines probable cause before issuing a warrant. *Wilson v. State,* 621 S.W.2d 799 (Tex.Crim.App.1981). In order to establish probable cause to arrest the officer must demonstrate that he had enough information to warrant a man of reasonable caution in believing that a felony had been committed. *Wilson, supra; Brown v. State,* 481 S.W.2d 106, 110 (Tex.Crim.App.1972). Mere suspicion that

the person arrested committed a crime is not sufficient to justify a warrantless arrest. *Gill v. State,* 134 Tex.Crim. 363, 115 S.W.2d 923 (1938). We cannot agree with the trial court that there was probable cause to arrest for either murder or burglary. *See and cf. Townsley v. State,* 652 S.W.2d 791 (Tex.Crim.App.1983). Even the assistant criminal district attorney had stated to the court "... I don't think he (Alonzo) had probable cause because there may have been a logical explanation for his prints to have been there."

In *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the United States Supreme Court wrote:

Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* [*v. U.S.*] requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' [371 U.S. 471 at 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)]. *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment.

422 U.S. at 601–02, 95 S.Ct. at 2260–61. *See also* TEX. CONST. art. I, § 9.

In determining whether a confession given following an illegal arrest is sufficiently attenuated to permit the use of the confession at trial the Supreme Court in *Brown v. Illinois*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62, made clear the following factors are to be considered in making this determination:

(1) whether *Miranda* warnings were given;

(2) the temporal proximity of the arrest and the confession;

(3) the presence of intervening circumstances; and

(4) the purpose and flagrancy of the official misconduct.

*See also Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Green v. State*, 615 S.W.2d 700 (Tex.Crim.App.1980), *cert. denied*, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981); *Bell v. State*, 724 S.W.2d 780 (Tex.Crim.App.1986); *Self v. State*, 709 S.W.2d 662, 666 (Tex.Crim.App. 1986).

■ In the case at bar the appellant was given the *Miranda* warnings. It is not challenged that he understood his rights, did not invoke them, and in fact, waived them. In *Brown* the Supreme Court held, however, that *Miranda* warnings are insufficient standing alone to attenuate the taint of an arrest in violation of the Fourth Amendment, though are an important factor, in determining whether the confession or statement was obtained by exploitation of an illegal arrest. 422 U.S. at 603, 95 S.Ct. at 2261. *See also Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Barber v. State*, 737 S.W.2d 824, 832 (Tex.Crim.App.1987). The first factor falls on the State's side of the ledger.

With regard to the second factor, the temporal proximity of the arrest and the confession or statement, the record reflects that an hour elapsed between the arrest and the statement, although Detective Alonzo once indicated that he and the appellant talked for about an hour at the Homicide Office before the statement was taken. Justice Stevens, concurring in *Dunaway*, concluded the temporal relationship between the arrest and confession may be an ambiguous factor. 442 U.S. at 220, 99 S.Ct. at 2260. Nevertheless the time factor between the arrest at appellant's apartment and the statement falls on the appellant's side of the ledger on the question of taint. "The longer the time elapsed between confession and arrest the more likely it is that the taint of the illegal arrest will be attenuated." *Townsley v. State*, 652 S.W.2d 791, 797 (Tex.Crim.App.1983). In *Self*, 709 S.W.2d at 666; *Green*, 615 S.W.2d at 709; and *Burnett v. State*, 754 S.W.2d 437, 445 (Tex.App.—San Antonio 1988, pet. ref'd), a two hour differential fell on the defendant's side of the ledger.

With regard to the third factor, we find that after the *Miranda* warnings there were no intervening circumstances. The appellant was not taken before a magistrate after his warrantless arrest. *See* TEX.CODE CRIM.PROC.ANN. arts. 14.06 and 15.17 (Vernon Supp.1989). Although not always essential[2], the failure to do so

---

**2.** It is well settled that unless a causal connection is shown between failure to take the ac-

may be taken into consideration in evaluating the third factor. Further there was no break in the interrogation and appellant did not confer with friends or relatives or others. The third factor also falls on the appellant's side of the ledger.

The fourth factor is the purpose and flagrancy of the official misconduct. In *Brown* it is observed that the Supreme Court, after noting that the *Miranda* warnings were not the only factor to be considered, wrote:

> The temporal proximity of the arrest and the confession, the presence of intervening circumstances ... and *particularly*, the purpose and flagrancy of the official misconduct are all relevant. *See Wong Sun v. United States*, 371 U.S. at 491, 9 L.Ed.2d 441, 83 S.Ct. 407, 419. (Emphasis supplied).

422 U.S. at 603–04, 95 S.Ct. at 2261–62.

The importance of the fourth factor is clearly indicated. *Self*, 709 S.W.2d at 667; *Barber*, 737 S.W.2d at 833.

In the instant case the arrest at appellant's apartment was warrantless and without probable cause, despite the trial court's conclusion to the contrary on the latter issue. There were no exigent circumstances. Detective Alonzo did not attempt to obtain an arrest warrant for the appellant either for murder or burglary. He did not believe he had probable cause. Alonzo utilized the traffic warrants to accomplish the arrest. He did not normally execute such warrants. His stated purpose was to transport the appellant to the Homicide Office so he could be questioned in those surroundings about the "incident"—meaning the pending murder investigation. While appellant was given the *Miranda* warnings he was told he was in custody only on the traffic warrants. After informing appellant of the murder investigation, the location of the Matt Garcia Apartments was described. After appellant admitted knowing the location of the complex, a statement was elicited from him that he had never been inside the apartment complex. Only after the statement had been reduced to writing was the appellant informed he was a suspect. Detective Alonzo admitted he did not question appellant about the murder, that his purpose was only to get the statement that appellant had not been inside the apartment complex. The statement was exculpatory but Alonzo knew that when taken with the fingerprint evidence it would be incriminating and would show that appellant lied.

In *Beasley v. State*, 728 S.W.2d 353 (Tex. Crim.App.1987), it was observed that the action of removing a person from his residence without a warrant or exigent circumstances sufficient to authorize a warrantless arrest under Chapter 14 of the Code of Criminal Procedure cannot be said to be entirely without flagrancy. The State compounded the situation by deliberately bypassing the production of the traffic arrest warrants for reasons not revealed by the record. Even at this late date the State makes no claim that there was negligence or omission on the part of its prosecutor.

In *Taylor v. Alabama, supra,* the Supreme Court observed that:

> [T]his case is a virtual replica of both *Brown* and *Dunaway*.... In this case as in *Dunaway* the police effectuated an investigatory arrest without probable cause based on an uncorroborated tip, and involuntarily transported petitioner to the station for interrogation in the hope that something would turn up.

The arrest here was without probable cause and it had a "quality of purposefulness." It was an "expedition for evidence" admittedly undertaken "in the hope that something might turn up." *Brown*, 422 U.S. at 605, 95 S.Ct. at 2262. *See also Green v. State*, 615 S.W.2d 700 (Tex.Crim. App.1980), *cert. denied*, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). The fourth factor comes down squarely on appellant's side of the ledger since the conduct did arise to a purposeful impropriety if not flagrancy.

---

cused before a magistrate and the giving of a confession or statement the validity of such confession or statement is not affected by such failure. *Ex parte Stansbery*, 702 S.W.2d 643 (Tex.Crim.App.1986); *Self*, 709 S.W.2d at 666–67 and cases there cited.

Appellant's statement was thus tainted by the illegal arrest and was inadmissible for that reason. The necessary predicate for error in admitting evidence has been shown. There was both a ruling on the motion to suppress and a timely objection, and a substantial right was affected. *See* TEX.R.CRIM.EVID. 103(a)(1). The question remains whether the error was harmless error in light of TEX.R.APP.P. 81(b)(2). In view of the State's evidence and jury argument we are unable to conclude beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

Appellant's first point of error is sustained. In view of our disposition of this point of error we need not address appellant's other points of error.

The judgment is reversed and the cause remanded.