Rhynes-CC v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-128-CR

     CLARENCE CHARLES RHYNES,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 194th District Court
Dallas County, Texas
Trial Court # F94-51241-HM
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant Rhynes appeals from his conviction for murder (enhanced by a prior felony
conviction) for which he was sentenced to life in the Texas Department of Criminal Justice and
a $10,000 fine.
      Appellant, three days after his release from jail, telephoned 9-1-1 that he had found his Aunt
Jean murdered. The police did not suspect Appellant but questioned him as a possible witness. 
During the interview, due to conflicts in his story, Appellant became a suspect. The police
Mirandized him and shortly thereafter he confessed that he had killed his aunt. Defendant was
convicted by a jury and assessed life in prison and a $10,000 fine.
      Appellant appeals on five points of error.
      Point one: "The trial court erred by finding Appellant's written confession admissible before
the jury because it was not freely nor voluntarily given by Appellant." 
      A pretrial hearing was held on Appellant's motion to suppress the statement. Officer Perez
testified she responded to a 9-1-1 call from 819 East Ann Arbor. Appellant and his girlfriend,
Sandra Wells, were standing in the driveway when she arrived. Appellant related that he had been
staying with his girlfriend since he got out of jail three days before and that he came to his aunt's
house that night and found her dead. At the time Appellant and his girlfriend were not suspects,
but merely witnesses. Perez did not notice any scratches or injuries on Appellant. He was fully
cooperative, and he and Sandra agreed to go to the police station and give statements. Because
of this, Perez did not Mirandize Appellant.
      Officer Whisenhunt transported Appellant to the police station in the front seat of his squad
car. Whisenhunt considered Appellant a witness because he was the one who had called the
police. Whisenhunt stated if he had considered Appellant a suspect, he would not have permitted
him to ride in the front of his squad car unhandcuffed. Whisenhunt did not notice any injuries on
Appellant because it was dark, and he did not mirandize Appellant.
      Detective Davison arrived at the murder scene at 11:45 p.m. He introduced himself as
Appellant sat in Officer Whisenhunt's squad car. Davison asked if it was true that Appellant had
found his aunt's body, and Appellant said that it was. Appellant agreed to talk with Davison
further at the police station. Appellant and Davison arrived at the police station by 2:30 a.m.
      Davison met Appellant in an interview room and asked him about his discovery of the body. 
Davison saw scratches on Appellant's face but had no reason to suspect Appellant of the murder. 
After about an hour, Davison asked how he got the scratches on his face; Appellant said he got
them during a fight in jail with a white boy. Davison then noticed cuts on Appellant's left hand
and asked about them; Appellant said it was cut while picking up a table in the jail.
      Davison left the interview room and interrupted the interview of Appellant's girlfriend Sandra. 
He asked if she noticed any cuts on Appellant's face and hand when she picked him up from jail. 
She said she did not; that she and Appellant had sex shortly after she picked him up from jail and
that she would have noticed any scratches or cuts on him if there were any. Davison confronted
Appellant with this information and again asked him how he got the scratches and cuts. When
Appellant insisted he got them in jail, he became a suspect in Davison's mind. Davison told
Appellant they had a problem; stopped the interview; and read Appellant his Miranda rights.
      Davison then asked Appellant if he was having any problems with his aunt, and he said he was
not. Davison again interrupted the interview of Sandra and asked her the same question. Sandra
said Appellant was real upset because some money had come to his aunt's house while he was in
jail and his aunt did not credit his jail account; that Appellant was very upset about not getting his
money. Davison went back to Appellant and told him what Sandra had said. Appellant then said
there had been a problem with money and then stated, "I did it, I did it."
      Davison asked Appellant to make a written statement and he agreed to do so. Davison again
read the Miranda rights to Appellant and Appellant then dictated a three-page statement. Davison
then read the statement aloud to Appellant and gave it to Appellant to read. Appellant read the
entire statement aloud. Davison asked Sonya Gray, a civilian employee of the police department,
to witness the statement and to read the entire statement aloud. Appellant said he did not want to
hear it and when Davison asked him to read the statement, he refused. Gray then read the
statement to herself. Davison then passed the statement to Appellant and asked if it was his
statement. He said it was, initialed each page, and signed the statement. Gray and Davison each
signed the statement.
      Appellant testified at the hearing that Davison did not read him his Miranda rights and, in
fact, he had never heard of Miranda rights. Appellant filed a motion to suppress which the trial
court overruled and found beyond a reasonable doubt that Appellant was properly warned under
Miranda and Art. 38.22 of the Code of Criminal Procedure; that Appellant waived those rights
and freely and voluntarily, without compulsion, threats, or promises, made and signed the written
statement.
      The statement was admitted before the jury at trial and the jury was instructed that if they did
not believe Appellant was given his Miranda warnings, or had a reasonable doubt thereof, and that
he knowingly, intelligently and voluntarily waived such rights, or had a reasonable doubt thereof,
that they would not consider the statement for any purpose.
      The trial court is the sole trier of facts at a hearing to determine the voluntariness and
admissibility of statements. Jones v. State, 833 S.W.2d 118, 125, n.12 (Tex. Crim. App. 1992),
cert. denied, 113 S.Ct. 1285 (1993). The trial court may believe or disbelieve all or any part of
a witness's testimony. Meek v. State, 790 S.W.2d 618, 620 (Tex. Crim. App. 1990). The trial
court's decision is reviewed under an abuse of discretion standard. Dinkins v. State, 894 S.W.2d
330, 348 (Tex. Crim. App. 1995). The reviewing court is not at liberty to disturb any finding of
the trial court which is supported by the record. Self v. State, 709 S.W.2d 662, 664-5 (Tex. Crim.
App. 1986). When the evidence is conflicting as to the voluntariness of a confession, the trial
court does not err in finding the confession voluntary. Dinkins, supra.
      Moreover, the voluntariness of Appellant's confession was submitted as a fact issue to the jury
via a general instruction in the charge. See Dinkins, supra at p. 353. Point one is overruled.
      Point two: "The evidence is insufficient to sustain Appellant's conviction because no rational
trier of fact could have found Appellant guilty of murder beyond a reasonable doubt."
      When reviewing the legal sufficiency of the evidence, a reviewing court views both
circumstantial and direct evidence in the light most favorable to the verdict and determines
whether any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Turner v. State, 805 S.W.2d 423,
427 (Tex. Crim. App. 1992), cert. denied, 502 U.S. 870 (1991).
      A factfinder may reject all or part of a witness's testimony, and even if it is uncontroverted. 
Merchant v. State, 810 S.W.2d 305, 309 (Tex. App.—Dallas 1991, pet. ref'd). Conflicts
regarding witnesses' credibility and the weight given their testimony are presumed to have been
resolved in favor of the prosecution. Adelman v. State, 828 S.W.2d 418, 423 (Tex. Crim. App.
1992).
      The pathologist testified the deceased was killed by a stab wound. The identity of the
deceased was established by several witnesses including Appellant. Appellant's written statement,
"I was trying to keep her from killing me and it ended up the other way; I stabbed Aunt Jean once
in the chest and once in the shoulder. Aunt Jean fell on the bed and I left," is sufficient to prove
Appellant was the person who committed the murder. Sandra Wells testified Appellant was angry
at Aunt Jean for spending his money while he was in jail. Her testimony further established
opportunity; Appellant had access to her car and car keys between 2:30 and 7:30 a.m. on Saturday
morning and could have made the 15-minute drive to Aunt Jean's house while Wells slept. 
Evidence of lack of forced entry showed the murderer was someone who had a key or was
someone whom she felt comfortable in admitting into her home at night. Officer Davison testified
Appellant showed him a key to Aunt Jean's house.
      Any reasonable trier of fact could have found Appellant guilty of murder beyond a reasonable
doubt. Point two is overruled.
      Point three: "The trial court erred by overruling Appellant's objection to the prosecutor's
argument. 
      During the State's final argument at the guilt-innocence phase the prosecutor said:
You saw those pictures. Attorney said looked like -- He would tell you anything. And
he's been doing that, some of the things he made up.
 
[DEFENSE COUNSEL]: I'm going to object to that as attacking defendant over the head
of counsel.
 
THE COURT: Objection overruled. Attorney can answer opposing counsel.
      Specifically, Appellant contends that the above argument attacked him "over the shoulder of
defense counsel." The gist of defense counsel's argument was that Appellant was sleeping with
Sandra Wells at the time of the murder and did not kill his aunt, but if he did, it was done in self
defense.
      On direct examination, Appellant testified he saw his Aunt's dead body as he walked past her
bedroom (at the time he supposedly discovered her body just before calling 9-1-1). The prosecutor
then asked Appellant how he knew Aunt Jean was dead from such a distance which Appellant
estimated to be seven footsteps away. The prosecutor also asked Appellant to show him stab
wounds in a close-up picture of the victim's torso and head. There were none. Appellant then
said he could tell from the cuts on her hands. The prosecutor then asked, "Oh, in four seconds
you saw the cuts on her hands?" Appellant replied, "Oh, man."
      In response to this damaging cross-examination, defense counsel showed the jury a picture
of the crime scene and said, "It's a situation where you would know Aunt Jean was murdered or
stabbed. Look at this. It looks like her neck is slit when you glance in there. Does anyone think
she's not dead laying on her back with her eyes open?" Appellant had never testified that he could
see that his aunt's neck as slit; he only testified he saw the ripped gown and cut hands.
      The prosecutor responded to defense counsel's argument by saying Appellant pretended to
discover her body because it would focus attention away from him as the suspect. The prosecutor
then stated: "And he came over from seven feet away for four seconds, one, two, three, four,
bam—been stabbed to death. You saw those pictures. Attorney said looked like -- he would tell
you anything to get that man off; anything. And he's been doing that, some of the things he made
up."
      Proper jury argument includes: (1) summation of the evidence; (2) reasonable deductions from
the evidence; (3) answer to argument of opposing counsel; and (4) pleas for law enforcement. 
McFarland v. State, 845 S.W.2d 824 (Tex. Crim. App. 1992), cert. denied, 113 S.Ct. 2937
(1993).
      The argument complained of is a reasonable deduction from the evidence and a proper reply
to counsel's argument since Appellant never testified that he saw a wound on his aunt's neck. 
Moreover, the argument, if error, was harmless under the record and made no contribution to the
conviction. Tex. R. Crim. Proc. 81(b)(2). Point three is overruled.
      Point four: "The trial court erred by denying Appellant's request for the defense of alibi to
be included in the jury charge." 
      Appellant requested a charge on the defense of alibi to be included in the charge. This was
denied by the court on the ground that it would be duplicitous since the State already had the
burden under the charge to prove that Appellant had committed the offense beyond a reasonable
doubt.
      If an alleged defensive theory merely negates an element of the offense, then no affirmative
charge must be given. Sanders v. State, 707 S.W.2d 78, 81 (Tex. Crim. App. 1986). The
defensive theory of alibi is one of those defensive theories that merely negates an element of the
offense, i.e., identification. Holliman v. State, 879 S.W.2d 85, 87 (Tex. App.—Houston [14th
Dist.] 1994, no pet.). 
      The court charge required the jury to find that Appellant knowingly or intentionally caused
the death of the victim, and then instructed the jury: "If you do not so find and believe from the
evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit
the defendant and say by your verdict, not guilty."
      The jury could not have convicted Appellant under the charge given if it believed his defense
of alibi or had a reasonable doubt as to whether he was the person who committed the murder. 
The trial judge properly denied the alibi instruction. Point four is overruled.
      Point five: "The trial court erred by overruling Appellant's objection to State's Exhibit 121."
      Specifically, Appellant contends that the exhibit which contains copies of Appellant's
judgment and sentence in Cause No. F-85-79450-K (a prior felony conviction used for
enhancement) should not have been admitted at the punishment phase. Appellant contends that
because the conviction was based on a guilty plea it must be supported by sufficient evidence to
show the guilt of the defendant and argues that the confession in the case invalid because it post-dated the judgment.
      A prior conviction alleged for enhancement may be collaterally attacked only if it is void or
tainted by a constitutional defect. Galloway v. State, 578 S.W.2d 142, 143 (Tex. Crim. App.
1979). Lesser infirmities in a prior conviction may not be raised by collateral attack even if they
would have resulted in reversal if they had been presented on appeal. Galloway, supra.
      In Cause No. F-85-79450-K Appellant pled guilty in 1985 to aggravated robbery and was
sentenced to 20 years. He signed a judicial confession in that case. The judicial confession is
hand-dated 9 November and figures which could be 1985 or 1988. The trial judge found that the
figures were 1985. In any event, Appellant's complaint is a collateral attack on the sufficiency
of the evidence which cannot be made. Point five is overruled.
      The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed August 14, 1996
Do not publish