# NO. 12-22-00066-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| **WILLIE JAMES CAMPBELL,** **APPELLANT** | § | **APPEAL FROM THE 241ST** |
| **V.** | § | **JUDICIAL DISTRICT COURT** |
| **THE STATE OF TEXAS,** **APPELLEE** | § | **SMITH COUNTY, TEXAS** |

## *MEMORANDUM OPINION*

Appellant Willie James Campbell was indicted for possession of a controlled substance with intent to deliver.[1]  After the trial court denied Appellant's motion to suppress, Appellant entered an open plea of "guilty," and the trial judge found Appellant "guilty" and assessed punishment at thirty years of confinement.  In his sole issue, Appellant challenges the trial court's denial of his motion to suppress.  We affirm the trial court's judgment.

## BACKGROUND

At the hearing on the motion to suppress, Officer Cory Chamberlain of the Tyler Police Department testified that he was dispatched to a residence on Tol Avenue based upon a 9-1-1 call. The woman who called 9-1-1 related that Appellant "shot at her[,]" but the call was disconnected and dispatch was unsuccessful in reconnecting with the victim, so Chamberlain went to the residence.  Chamberlain explained that when dispatch makes multiple attempts to call a victim back and no one answers, he assumes the worst, so when he arrived at the residence, he wanted to know if the threat still existed and "to make sure everybody is okay."  When Chamberlain arrived, he saw Appellant walking away from a group of people outside the house.  Chamberlain testified that he then entered the home for a protective sweep to determine whether a victim was inside, and

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West 2017).

he observed a pistol in "plain sight[.]" Chamberlain explained that when he returned outside, Sergeant David Hall had arrived at the scene. Chamberlain saw Appellant speaking with Hall, and Appellant then led Hall into the house. Chamberlain told Hall about seeing a pistol inside the residence. According to Chamberlain, Appellant wanted to show officers the pistol and get his cell phone, so Chamberlain assumed that Appellant consented to officers entering the residence. Chamberlain reentered the house and observed a jar that appeared to contain marijuana, but he did not seize the jar. Chamberlain explained that officers then obtained a search warrant.

During cross-examination, Chamberlain testified that although the person who called dispatch gave the address as 2427 Tol Avenue, Appellant's address was actually 2724 Tol Avenue. Chamberlain explained that as a patrol officer, he knew that Tol Avenue is only one block long, and it "encompasses the 2700 block." According to Chamberlain, 2427 Tol Avenue does not exist, but using the information the caller provided regarding Appellant's name, "dispatch was able to see that there is a Willie Campbell associated [with] 2724 Tol [Avenue]." Chamberlain testified that he does not recall when dispatch told him Appellant's correct address.

Hall testified that he was dispatched to the scene in reference to a report that shots had been fired. Other officers had told Hall that they saw a firearm when they entered the residence. When Hall arrived, he asked Appellant about the gun, and Appellant said he had been shooting at a dog. Hall testified that he asked Appellant for consent to secure the weapon, and Appellant gave his consent and entered the home with Hall, Chamberlain, and another officer. Appellant had been detained by Chamberlain and was handcuffed. After securing the firearm, Appellant and the officers returned outside, and Hall contacted the vice unit and asked them to obtain a search warrant because officers saw a jar of what appeared to be marijuana. Officers obtained a search warrant and found cocaine in Appellant's residence.

The trial court signed an order denying Appellant's motion to suppress and made findings of fact and conclusions of law. The trial court found, in pertinent part, that Chamberlain entered Appellant's home "to perform a sweep, looking for any person who may[]be seriously injured or deceased[,]" and Appellant admitted to Hall that he possessed a firearm and "consented to officers entering the home with him present to retrieve the firearms." The trial court concluded that "[t]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid[,]" but any such

search "must be 'strictly circumscribed by the exigencies which justify its initiation.'"[2] In addition, the trial court concluded that if a search is justified under the emergency doctrine, the police may seize evidence that is in plain view, but the emergency doctrine does not apply when the police are "conducting a search based on probable cause to gather evidence of a crime[.]" Moreover, the trial court concluded that the emergency doctrine "allows the police to engage in conduct that would otherwise violate the Fourth Amendment if they are acting on a reasonable belief that doing so is immediately necessary 'to protect or preserve life or avoid serious injury.'" The trial court further concluded that in determining whether the objective standard of reasonableness is met, the court may "look at the facts that were known to the officers at the time[]" and consider the officers' training and experience in similar situations. The trial court stated that "[c]onsidering the facts propounded during the hearing, and the application of the law, this Court is of the opinion that the Defendant's motion should be denied."

Appellant subsequently pleaded "guilty" in an open plea, and the trial court found Appellant "guilty" and imposed a sentence of thirty years of confinement. This appeal followed.

**MOTION TO SUPPRESS**

In his sole issue, Appellant argues that the trial court erred by denying his motion to suppress because the State did not meet its burden of proving an applicable exception to the requirements of the Fourth Amendment. Specifically, Appellant contends that the warrantless searches of his home were not justified as lawful protective sweeps under the emergency doctrine, and because evidence was unlawfully obtained, the affidavit supporting the issuance of the search warrant lacked probable cause. Appellant further asserts that the evidence confiscated as a result of the search warrant therefore constituted fruit of the poisonous tree.

**Standard of Review and Applicable Law**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). We give almost total deference to the trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, but we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App.

---

[2] The trial court's order quoted from *Shepherd v. State*, 273 S.W.3d 681, 683-84 (Tex. Crim. App. 2008).

2008); *see also* **Kerwick**, 393 S.W.3d at 273. At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of witnesses. **Maxwell v. State**, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Therefore, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. **State v. Ross**, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We must uphold the trial court's ruling on a motion to suppress if the ruling was supported by the record and was correct under any theory of law applicable to the case. **Alford v. State**, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013); **Armendariz v. State**, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

In reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. **State v. Kelly**, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as here, a trial court files findings of fact with its ruling on a motion to suppress, we view the evidence in the light most favorable to the ruling and determine whether the record supports the trial court's findings. **Valtierra v. State**, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); **Romero v. State**, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Unless the trial court abused its discretion by making a finding that is not supported by the record, we will defer to the trial court's fact findings and not disturb them on appeal. **Cantu v. State**, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991); **Self v. State**, 709 S.W.2d 662, 664-65 (Tex. Crim. App. 1986). We address only the question of whether the trial court properly applied the law to the facts. **Romero**, 800 S.W.2d at 543.

Under both the United States and Texas constitutions, a warrantless search of either a person or property is presumed unreasonable subject to certain exceptions. **Brigham City, Utah v. Stuart**, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006); **Estrada v. State**, 154 S.W.3d 604, 608 n.12 (Tex. Crim. App. 2005). The notion that officers perform certain community caretaking functions forms the basis of three separate doctrines created by the United States Supreme Court: (1) the emergency aid doctrine, (2) the automobile impoundment and inventory doctrine, and (3) the community caretaking doctrine. **Laney v. State**, 117 S.W.3d 854, 860 (Tex. Crim. App. 2003). "The common thread in each of these three exceptions to the warrant and probable cause requirements is the officer's purpose." **Id**.

Under the emergency doctrine, officers may enter a residence without a warrant if "they reasonably believe that a person within is in need of immediate aid." **Shepherd v. State**, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing **Mincey v. Arizona**, 437 U.S. 385, 392, 98 S. Ct.

2408, 57 L. Ed. 2d 290 (1978)); *see Laney*, 117 S.W.3d at 860 (holding that the emergency doctrine justifies a warrantless entry if officers have an immediate, reasonable belief that they must act to protect or preserve life or to avoid serious injury). "[T]he emergency doctrine does not apply when the police are carrying out their 'crime-fighting' role by conducting a search based on probable cause to gather evidence of a crime." *Shepherd*, 273 S.W.3d at 684. In determining whether a warrantless search is justified under the emergency doctrine, courts apply an objective standard of reasonableness. *Laney*, 117 S.W.3d at 862. The objective standard examines the police officer's conduct and "takes into account the facts and circumstances known to the police at the time of the search." *Id*. (quoting *Brimage v. State*, 918 S.W.2d 466, 501 (Tex. Crim. App. 1994)). Additionally, courts "look to ensure that the warrantless search is 'strictly circumscribed by the exigencies which justify its initiation.'" *Id*. (quoting *Mincey*, 437 U.S. at 393, 98 S. Ct. at 2413, and *Bass v. State*, 732 S.W.2d 632, 635 (Tex. Crim. App. 1987)). A search conducted pursuant to consent is an exception to the warrant requirement. *Juarez v. State*, 758 S.W.2d 772, 776 (Tex. Crim. App. 1998).

**Analysis**

As discussed above, a 9-1-1 caller reported that Appellant fired a gun at her. Although the caller provided a transposed address, based upon Chamberlain's experience as a patrol officer, he knew that no such address existed. In addition, because the caller reported Appellant's name, dispatch learned that Appellant was associated with the residence at 2724 Tol Avenue. Dispatch informed Chamberlain that the call was disconnected. Chamberlain explained that he entered the residence to ascertain whether the threat still existed and someone inside needed assistance. Upon entering the residence, Chamberlain saw a firearm, and when he exited the residence, Hall had arrived and was speaking with Appellant outside the house. Hall testified that Appellant consented to officers entering the residence to secure the weapon, and when officers did so, they observed a jar of what appeared to be marijuana. The officers then secured a search warrant and discovered cocaine.

Viewing the evidence in the light most favorable to the trial court's finding and giving almost total deference to the trial court's findings on questions of historical fact and application-of-law-to-fact questions, we conclude that the trial court did not err by concluding that Chamberlain reasonably believed that a person inside the residence might need assistance and that Appellant consented to the second entry into the residence to secure the weapon. *See Kerwick*,

5

393 S.W.3d at 273; ***Shepherd***, 273 S.W.3d at 684; ***Neal***, 256 S.W.3d at 281; ***Laney***, 117 S.W.3d at 860; ***Maxwell***, 73 S.W.3d at 281; ***Ross***, 32 S.W.3d at 855; ***Juarez***, 758 S.W.2d at 776. We overrule issue one.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered January 11, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 11, 2022**

**NO. 12-22-00066-CR**

**WILLIE JAMES CAMPBELL,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0906-21)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*