**Robin Lee DUNCAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60722.**

Court of Criminal Appeals of Texas.

Oct. 6, 1982.

Kenneth L. Sanders, Houston, for appellant.

Carol S. Vance, Former Dist. Atty., John B. Holmes, Jr., Dist. Atty., Timothy G. Taft, Michael Kuhn and John Holleman, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON COURT'S MOTION FOR REHEARING

ODOM, Judge.

On original submission a unanimous panel reversed appellant's conviction under authority of *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). On rehearing the panel opinion was withdrawn and the conviction was affirmed on the conclusion that *Payton* would not be applied retroactively. In the recent decision in *United States v. Johnson,* —— U.S. ——, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the Supreme Court ruled that *Payton* should be applied to cases not final prior to the decision in *Payton.* This case is governed by those circumstances. We therefore granted rehearing on the Court's own motion and now reinstate and adopt the panel opinion:

"This is an appeal from a conviction for murder. Punishment was assessed at 15 years.

"Appellant challenges the admissibility of her confession. The offense was committed on January 9, and the confession was given to New Orleans police officers on April 6. Admissibility of the confession is challenged on the theory that it was the fruit of an unlawful arrest. The arrest occurred and the confession was obtained under the following circumstances, which we quote from the trial court's findings of fact, and which are supported by the evidence presented at the hearing on the motion to suppress:

"'1. At approximately 2:00 a. m. on April 6, 1976, Detective John E. McKenzie had a conversation with an Early Conley, a black male, who was being interrogated concerning some criminal offense unrelated to the murder offense with which the Defendant Robin Lee Duncan stands charged. The said Early Conley related to Detective John E. McKenzie that approximately one month prior thereto he, Early Conley, was present in a room in New Orleans with two white females known to him as Angie and Christi; that the said Angie and Christi stated that they wanted to sell a van, motor vehicle, because it was hot and that they were wanted for murder in Houston, Texas, in late December or early January; Detective McKenzie ascertained from other officers of the New Orleans Police Department that the person referred to by Conley as Angie was, in fact, a Robin Lee Duncan and that the person referred to as Christi was, in fact, a Shelia Haselhorst.

"'2. At the direction of Detective McKenzie, a Detective Brady of the New Orleans Police Department placed a telephone call to the homicide division of the Houston Police Department to ascertain if the homicide division of the Houston Police Department was investigating a murder offense of the nature related by Early Conley. Detective McKenzie listened to such telephone conversation and learned that the homicide division of the Houston Police Department did have such a murder offense under investigation.

"'3. Detective McKenzie had reasonable cause to believe that Robin Lee Duncan and Shelia Haselhorst had committed a felony offense of murder in Houston,

Texas. Detective McKenzie directed two other New Orleans Police detectives, Dupose and Brady, to take Robin Lee Duncan and Shelia Haselhorst into custody and bring them into the New Orleans Police Department station for investigation concerning the reported murder offense in Houston, Texas.

" '4. At approximately 3:15 a. m. the Defendant Robin Lee Duncan was brought into the criminal investigation division of the New Orleans Police Department. At that time Detective McKenzie orally advised the Defendant Robin Lee Duncan of her legal rights, as testified to by Detective McKenzie. Robin Lee Duncan acknowledged she understood such rights and wished to waive same.

" '5. That thereafter Detective McKenzie at approximately 3:30 a. m. orally talked with the Defendant Robin Lee Duncan concerning her knowledge of the reported murder. The oral conversation concluded at approximately 4:15 a. m. at which time the Defendant Robin Lee Duncan indicated that she would give Detective McKenzie a statement as to what she knew about the matter.

" '6. At approximately 4:30 a. m. Detective McKenzie again formally warned the Defendant Robin Lee Duncan of her legal rights by presenting same to her in writing which she acknowledged that she understood and waived in writing, as reflected by State's Exhibit No. 1.

" '7. Thereafter, beginning at 4:45 a. m., the Defendant Robin Lee Duncan voluntarily gave a written statement to Detective John E. McKenzie in response to questions asked by Detective McKenzie, as reflected in State's Exhibit No. 2. The making of the written statement concluded at 6:30 a. m. and the Defendant after reading same voluntarily signed said written statement. The reading and signing of the statement was witnessed by Detectives Paul Drouant, Michael Morgan and Sergeant Steve London.' "

■ "Appellant argues that there were no exigent circumstances justifying her arrest without a warrant by getting her out of her bed in her home at 3:00 a. m. In the recent case of *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the Court succinctly stated the law on this matter:

" 'The question before us is a narrow one. The search at issue here took place in the absence of consent or exigent circumstances. Except in such special situations, we have consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant. See *Payton v. New York,* 445 U.S. 573 [100 S.Ct. 1371, 63 L.Ed.2d 639] (1980); *Johnson v. United States,* 333 U.S. 10, 13–15 [68 S.Ct. 367, 368–69, 92 L.Ed. 436] (1948). Thus, as we recently observed, "[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshhold may not reasonably be crossed without a warrant." *Payton v. New York,* supra, [445 U.S.] at 590 [100 S.Ct. at 1382]. See *Coolidge v. New Hampshire,* 403 U.S. 443, 474–475, 477–478 [91 S.Ct. 2022, 2042–43, 2044, 29 L.Ed.2d 564] (1971); *Jones v. United States,* 357 U.S. 493, 497–498 [78 S.Ct. 1253, 1256–57, 2 L.Ed.2d 1514] (1958); *Agnello v. United States,* 269 U.S. 20, 32–33 [46 S.Ct. 4, 6–7, 70 L.Ed. 145] (1925).'

"The State's argument that there were exigent circumstances justifying the warrantless arrest in this case consists of three short statements:

" 'Officers received information from Early Conley at approximately 2:00 a. m. on April 6, 1976. The informant advised police that Appellant believed that she was "hot in Houston [and that she was] being looked for by some bikers as well as the police." In light of Appellant's fear of apprehension and the time of day, exigent circumstances justified the warrantless arrest.'

"This argument ignores the fact that Conley's information came from a conversation he had with appellant approximately a month before he told the police about it. When this fact is coupled with the officer's knowledge that appellant had not yet left town, any inference of exigency vanishes. The facts of this case simply do not show exigent circumstances. The arrest was illegal.

◼ "The State next argues that the confession was 'obtained by means sufficiently distinguishable from the warrantless arrest and, thus, was purged of any taint.' In *Phelper v. Decker,* 401 F.2d 232 (5 Cir. 1968), the court said:

"'Until [*Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441] an illegal arrest did not render a subsequent confession or verbal statement inadmissible as illegally seized evidence, barring exceptional circumstances. But in *Wong Sun* the Court held that confessions and other verbal statements could be just as much the fruit of the poisonous tree as more tangible pieces of physical evidence.

\*     \*     \*     \*     \*     \*

"'. . . [N]ot every piece of evidence uncovered after an illegal arrest is automatically excluded. Rather, the question to be asked each time is: "'[w]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." *Wong Sun v. United States,* 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455. In the *Wong Sun* opinion itself, the Court considered two situations where incriminating statements were given by a suspect. The first statement, obtained from James Wah Toy, was made immediately after six or seven officers had illegally broken into Toy's Laundry and chased him to the back room. Under those circumstances, the Court held that "it is unreasonable to infer that Toy's response [to questions by the officers] was suffi-

ciently an act of free will to purge the primary taint of the unlawful invasion." 371 U.S. at 486, 83 S.Ct. at 417, 9 L.Ed.2d at 454. At the other pole, the Court also considered the confession of Wong Sun. He had been released on his own recognizance after arraignment, but returned several days later to make a statement. The Court held that under these facts the statement was admissible for "the connection between the arrest and the statement had 'become so attenuated as to dissipate the taint. *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, [268] 84 L.Ed. 307, 312.'" *Wong Sun v. United States,* 371 U.S. at 491, 83 S.Ct. at 419, 9 L.Ed.2d at 457. Although the Supreme Court dealt with two extreme factual situations in *Wong Sun,* this hardly means that lower courts have to muddle around in finding the middle ground and the proper rule to apply in cases that fit neither end of the dissipated-undissipated "taint" spectrum, as several guidelines have naturally emerged in decisions construing *Wong Sun* which help us in determining when the taint is dissipated. One consideration is the proximity of the illegal arrest to the procurement of the confession or other evidence. While time is one consideration, that alone is not sufficient. As pointed out in *Collins v. Beto* [348 F.2d 823 (5th Cir.)], police could then keep a suspect "on ice" for a few days and then use everything he says. A second consideration would be other intervening occurrences between the illegal arrest and the acquisition of the evidence sought to be used. For example, the intervening guidance of an attorney would be one factor helpful in dissipating the taint, as would warnings of constitutional rights. But third, and most important, the courts should follow the Supreme Court's own suggestion and consider the circumstances under which the arrest was made. Inextricably bound up in this consideration would be whether the arrest was illegal as a matter of failure to comply with technical requirements or whether the arrest and subsequent search and seizure amounted to a gross violation of legal processes.'

"By footnote, the court elaborated on the distinction between 'failure to comply with technical requirements' and 'a gross violation of legal processes' with this quote from *Ralph v. Pepersack,* 335 F.2d 128, 136 (4 Cir. 1964): '[T]here is a significant distinction between police action which is unlawful because violative of constitutional provisions and police action which merely fails to accord with statute, rule or some other non-constitutional mandate.' The arrest in this case was violative of the Fourth Amendment, as explained in the above quote from *Steagald.* We thus are not presented with a mere failure to comply with some technical requirement.

"Addressing the other two considerations mentioned in *Phelper,* supra, we note that appellant was arrested for the express purpose of being interrogated about the murder, that she was roused from her bed at 3:00 a. m., and that from her arrival at the police station fifteen minutes later she was subjected to practically continuous interrogation until 6:30 a. m. when she signed the written confession.[1] The considerations of proximity of arrest to confession and of other intervening occurrences between the illegal arrest and the giving of the confession both weigh against the State. We find the State has not met its burden of proof to show the confession was obtained by means sufficiently distinguishable from the illegal arrest to purge it of the primary taint. The confession was inadmissible and it was reversible error to deny the motion to suppress.

"The judgment is reversed and the cause remanded."

The motion for rehearing is granted, and for the reasons stated the judgment is reversed and the cause remanded.

TEAGUE, J., concurs in the result.

1. She was allowed to use the restroom, and at times one or more of the six to eight officers present during the questioning would leave the interrogation room to give her the impression that her statements were being checked with the informant or the other suspect in the case, whom she believed also to be in custody at the time. She thus was not *literally* under 'continuous' interrogation, but the interrogation process was never truly interrupted during the period of over three hours from arrival at the station house to signing the confession. Although appellant was twice warned of her rights, those warnings were part of the interrogation process, not by any means a break in the process.