Affirmed and Opinion filed March 3, 2005









Affirmed and Opinion filed March 3, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01067-CR

____________

 

WIDENER MICHAEL
WEEMS,
Appellant

 

V.

 

THE STATE OF
TEXAS, Appellee

 



 

On Appeal from the 23rd
Judicial District Court

Brazoria County, Texas

Trial Court Cause No. 44,301

 



 

O P I N I O N

Following the trial court=s denial of his
motion to suppress, appellant Widener Michael Weems was convicted by a jury of
murder and assessed punishment at life in the Texas Department of Criminal
Justice, Institutional Division.  He
appeals his conviction on a single issue. 
He contends the trial court erred by denying his motion to suppress and
admitting his written and videotaped statements and any evidence discovered
through those statements because the State failed to prove the police had
probable cause to arrest him, and thus, his in-custody statements were the
fruit of an unlawful arrest.  We affirm. 








I.  Factual and Procedural Background

In January 2004, H.P. Weems reported his
father, Holmes Weems, missing.  Shortly
thereafter, investigators discovered Holmes Weems= vandalized and
abandoned vehicle in a field.  H.P. Weems
gave investigators information that if anything bad had happened to his father,
it would be at the hands of the Weems brothers, specifically appellant.[1]  Thereafter, investigators questioned
appellant=s wife, Emily Weems.  Mrs. Weems told investigators appellant and
his brother were responsible for murdering her father.  After receiving her statement, an
investigator allegedly drew up a probable cause affidavit and obtained a
warrant for appellant=s arrest. 
Thereafter, appellant was arrested and brought to the Brazoria County
Sheriff=s Department.  That night, after he received and waived his Miranda
rights, appellant made a written confession and directed officers to the
location of Holmes Weems= body. 
The next morning, appellant accompanied officers to the exact location
of the body, and, upon his return to the Sheriff=s office, gave a
videotaped statement about his involvement in the murder.   

Before trial on the instant case,
appellant filed a motion to suppress the written and videotaped statements he
made following his arrest.  The trial
court conducted a pre-trial hearing on appellant=s motion, made
findings of fact and conclusions of law, and denied the request.  In his sole appellate issue, appellant
contends the trial court erred by denying his motion to suppress his
incriminating statements because, he claims, the State failed to prove the
police had probable cause to arrest him, and thus, his in-custody statements
were the fruit of an unlawful arrest. 

 

 

 








II. Motion
to Suppress  

A.  Standard of
Review   

We review the trial court=s ruling on a
motion to suppress evidence under an abuse-of-discretion standard.  Villarreal v. State, 935 S.W.2d 134,
138 (Tex. Crim. App. 1996).  If supported
by the record, a trial court=s ruling on a
motion to suppress will not be overturned. 
Hill v. State, 902 S.W.2d 57, 59 (Tex. App.CHouston [1st
Dist.] 1995, pet. ref=d). 
At a suppression hearing, the trial judge is the sole finder of
facts.  Arnold v. State, 873
S.W.2d 27, 34 (Tex. Crim. App. 1993); Hill, 902 S.W.2d at
59.  The trial judge is free to believe
or disbelieve any or all of the evidence presented.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990).  We give almost
total deference to the trial court=s determination of
historical facts that the record supports, especially when the trial court=s findings turn on
evaluating a witness=s credibility and demeanor.  State v. Ross, 32 S.W.3d 853, 856
(Tex. Crim. App. 2000); Carmouche v. State, 10 S.W.3d 323, 327 (Tex.
Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  We give the same amount of
deference to the trial court=s ruling on mixed
questions of law and fact if the question is resolved by evaluating credibility
and demeanor.  Ross, 32 S.W.3d at
856. 

We consider de novo issues that are
purely questions of law, such as whether probable cause existed.  See Maxwell v. State, 73 S.W.3d 278,
281 (Tex. Crim. App. 2002); Guzman, 955 S.W.2d at 89.  Furthermore, if the trial court=s ruling is
reasonably supported by the record and is correct on any theory of law
applicable to the case, the reviewing court will sustain it upon review.  Villarreal, 935 S.W.2d at 138.  This is true even if the decision is correct
for reasons different from those espoused at the hearing.  Id. at 138B39. 

B.  Preservation
of Error








The State argues that appellant=s grounds on
appeal do not comport with  his objection
at trial, and further, that his objection was not specific enough to raise the
issue of probable cause.[2]  We disagree. 
Pursuant to Rule 33.1, appellate review is waived unless the record
shows appellant timely complained to the trial court stating the grounds for
the ruling sought with sufficient specificity, unless the grounds were apparent
from the context, and obtained a ruling on the complaint.  Tex.
R. App. P. 33.1; see Daniels v. State, 25 S.W.3d 893, 897 (Tex.
App.CHouston [14th Dist.]
2000, no pet.).  Appellant=s written motion
to suppress states Athe arrest was illegal, in that officers
had no lawful warrant for the Defendant=s arrest, nor had
authority to arrest without a warrant, when the Defendant was taken into
custody.@  Defense counsel objected numerous times
during the course of the suppression hearing, arguing appellant was not
lawfully under arrest, not lawfully in custody, was illegally detained and
arrested, and the arrest was warrantless with no authority to arrest without a
warrant.  These objections were
sufficiently specific under Rule 33.1. 
Therefore, appellant did not waive the issue and we may review it on
appeal.       

C.  Warrants and
Probable Cause to Arrest         

The Fourth Amendment to the United States
Constitution provides:

The right of the people to be secure in their persons,
houses, papers, and effects, against unreasonable searches and seizures, shall
not be violated, and no Warrants shall issue, but upon probable cause,
supported by Oath or affirmation, and particularly describing the place to be
searched, and the persons or things to be seized.








U.S. Const. Amend. IV.  The affidavit supporting an arrest warrant is
called a complaint.  Tex. Code Crim. Proc. Ann. art. 15.04
(Vernon 1977).  A complaint in support of
an arrest warrant must: (1) state the name of the accused, if known, and if not
known, must give some reasonably definite description of him; (2) show that the
accused has committed some offense against the laws of the State, either
directly or that the affiant has good reason to believe, and does believe, that
the accused has committed such offense; (3) state the time and place of the
commission of the offense, as definitely as can be done by the affiant; and (4)
be signed by the affiant.  Tex. Code Crim. Proc. Ann. art. 15.05
(Vernon 1977). 

Affidavits filed for issuance of arrest
warrants must provide the magistrate with sufficient information to support an
independent judgment that probable cause exists for the warrant.   McFarland v. State, 928 S.W.2d 482,
509 (Tex. Crim. App. 1996).  In
determining the sufficiency of an affidavit supporting an arrest warrant, a
reviewing court is limited to the Afour corners@ of the
affidavit.  Id. at
510.  If the State intends to justify an
arrest on the basis of a warrant, it is incumbent on the State to produce the
warrant and its supporting affidavit for inspection by the trial court.  Etheridge v. State, 903 S.W.2d 1, 19
(Tex. Crim. App. 1994).  AThis requirement
is imposed so that the trial court may inspect the documents and determine
whether probable cause existed and ensure that the arrestee=s rights have been
fully protected.@  Id.
(quoting Garrett v. State, 791 S.W.2d 137, 140 (Tex. Crim. App. 1990)). 

D.  Failure to
Produce the Warrant

If a warrant was required to make a valid
arrest, the State=s failure to produce the warrant at the
suppression hearing does not mandate suppression of the written statement.  Dorsey v. State, 964 S.W.2d 701, 703
(Tex. App.CHouston [14th Dist.] 1998, pet. ref=d).  In some instances, the State is excused from
producing both the warrant and probable cause affidavit at the suppression
hearing if the State introduces sufficient evidence or testimony to permit the
trial court to determine the existence of probable cause to effect the arrest.  In 
Garrett v. State, even though no supporting affidavit or other
documentation was introduced demonstrating a reasonable belief that appellant
violated a condition of parole, the warrant was nevertheless valid.  791 S.W.2d at 141.  The warrant was valid because during the
suppression hearing, a parole case worker testified regarding appellant=s failure to
comply with a parole condition, providing the trial court and defense counsel
the opportunity to determine whether the warrant was supported by a reasonable
belief.  Id.   








In Etheridge v. State, a formal
complaint in affidavit form was filed with a justice of the peace.  903 S.W.2d at 18.  In the complaint, the surviving victim of the
offense named the defendant as the attacker of her and the deceased, and
identified defendant=s photograph.  Id. 
The justice determined probable cause existed for defendant=s arrest, and
issued an arrest warrant for defendant.  Id.  The complaint made it into the record, but
the arrest warrant did  not.  Id. 
The magistrate testified at the suppression hearing that he did, in
fact, issue an arrest warrant based upon the affidavit, which he concluded
established probable cause for the defendant=s arrest.  Id. at 19.  The defendant had the opportunity to
cross-examine the magistrate as to the validity of the arrest warrant, but instead
chose to inquire about other matters.  Id.  No testimony contradicted the existence of
the arrest warrant.  Id.  The Etheridge court held that although
the State did not produce the actual arrest warrant, the trial court had an
adequate opportunity to determine whether probable cause existed for defendant=s arrest.  Id. 


In Myles v. State, neither the
warrants nor the supporting affidavits were produced at the suppression
hearing.  946 S.W.2d 630, 635 (Tex. App.CHouston [14th
Dist.] 1997, no pet.).  In lieu of the
originals, the State produced reconstructed documents on standardized
forms.  Id.  The magistrate testified she issued three
arrest warrants on the basis of probable cause affidavits filed by a DPS
trooper who had ticketed appellant for three traffic offenses.  Id. 
The officer who issued the original traffic tickets testified that he
recalled completing and filing probable cause affidavits with the magistrate
because of appellant=s unusual middle name.  Id. at 635B36.  This court held the State met its burden to
prove the existence and validity of the arrest warrants.  Id. at 636. 








In Torres v. State, the defendant
complained on appeal the trial court erred in denying his motion to suppress
evidence seized in connection with his arrest because the State failed to
present either the warrant or the probable cause affidavit at the suppression
hearing.  933 S.W. 2d 339, 339 (Tex. App.
Houston [14th Dist.] 1996, no pet.). 
Instead, the State offered testimony and presented the motion to
adjudicate upon which the arrest was based. 
Id. at 340.  The witnesses
who testified as to the existence of, and basis for, the arrest warrant
included the arresting officers who testified they verified the existence of a
felony warrant prior to the appellant=s arrest, the
custodian of records at the Sheriff Department=s warrant
division, the district court clerk regarding the motion to adjudicate and
capias issued prior to the appellant=s arrest, and the
court liaison for the probation office who filed the motion to adjudicate.  See id.  This court held the trial court was given the
opportunity to determine whether the capias was supported by probable cause and
the appellant=s rights were protected.  Id. at 341. 

The common thread woven through all of
these cases is compliance with the rule in Miller: when the State seeks
to justify an arrest on the basis of an arrest warrant issued by a magistrate,
the warrant and affidavit must be produced. 
Miller v. State, 736 S.W.2d 643, 648 (Tex. Crim. App. 1987).  This requirement is imposed so that the trial
court may inspect the documents and determine whether probable cause existed
and ensure that the arrestee=s rights have been
fully protected.  Garrett, 791
S.W.2d at 140.  When the State fails to
introduce the warrant and supporting affidavit, there nevertheless must be
sufficient evidence introduced at the suppression hearing to provide the trial
court with an adequate opportunity to determine whether probable cause existed
for the accused=s arrest. 
We have seen in Garrett, Etheridge, Myles, and Torres
that this may be accomplished in a variety of ways. 

Here, however, absolutely no evidence was
produced at the suppression hearing which would permit the trial court to
determine the existence of probable cause to arrest Weems.  The meager evidence consisted almost entirely
of hearsay and double hearsay that a warrant and affidavit even existed,
without any testimony as to the contents of the probable cause affidavit. 








In this case, the State did not present an
arrest warrant or affidavit stating probable cause to the trial court.  Instead, the State presented testimony of
three investigators from the Brazoria County Sheriff=s Department.[3]  Investigator Buck Henson testified that H.P.
Weems, II, the victim=s son, reported his father missing.  H.P. believed that if anything bad happened
to his father, it would be at the hands of the Weems brothers, specifically,
the appellant.  Thereafter, Henson
questioned Emily Weems, wife of appellant and daughter of the victim.  Mrs. Weems told investigators appellant and
his brother were responsible for murdering her father.  According to Henson, after receiving Mrs.
Weems=s statement and
finding the victim=s abandoned vehicle, Investigator Kinchloe
wrote the probable cause affidavit for the arrest on either kidnaping or
aggravated assault.  Henson was not aware
of the magistrate=s name or exact time the warrant was
issued, but said it was issued before appellant=s arrest.  Detective Richard Foreman, like Henson,
testified Kinchloe wrote the probable cause affidavit but he did not know who
signed the warrant.   He testified
further that Kinchloe told him he had Agood warrants.@  Appellant testified the police arrested him
for aggravated kidnaping and  never
showed him a warrant. 

Following the suppression hearing, the
trial judge made written findings of fact and conclusions of law.  The trial judge=s conclusions of
law provide that an arrest warrant based on probable cause was issued for the
arrest of appellant for the offense of murder. 
The trial judge=s findings of fact include in relevant
part:

1. 
Investigator Henson spoke with several people during the course of his
investigation, including family members of the deceased.  

2. 
Based on Henson=s interviews, the investigation was
narrowed to three individuals.  The three
individuals were Emily Weems, appellant, and appellant=s brother.  

3. 
Investigators spoke with Emily Weems at the Brazoria County Sheriff=s Office.  Emily Weems told the investigators appellant
and his brother were responsible for the murder.

4. 
Based on the information received from Emily Weems, Investigators Henson
and Kincheloe requested and obtained a warrant for appellant=s arrest.  Thereafter, appellant was arrested.     








A valid arrest warrant must be accompanied
by an affidavit with enough factual information to support probable cause, and
reflect the approval of a detached and neutral magistrate.  In this case, the record contains no warrant,
no affidavit, no evidence of the factual information within the affidavit, and
no evidence a warrant was actually issued by a detached and neutral
magistrate.  The State failed to call the
investigator who allegedly wrote  the
affidavit or the magistrate who allegedly issued the warrant.  Instead, the state called two officers.  Both officers testified to the existence of a
warrant and a supporting affidavit written by another officer.  However, neither officer had ever seen the
warrant or the affidavit, and neither officer knew who had allegedly issued the
warrant.  We hold the record does not
support the trial court=s conclusion there was a valid arrest
warrant based on probable cause.[4]  The trial court=s finding a
warrant existed was error.  Therefore,
appellant was illegally under arrest when he made the written and videotaped
statements.  The question remains whether
the resulting taint infecting the evidence in question was attenuated, thereby
making the evidence admissible notwithstanding the illegal arrest.  See Jones v. State, 833 S.W.2d 118,
124 (Tex. Crim. App. 1992) (citing Wong Sun v. United States, 371 U.S.
471 (1963)).  

E.  Attenuation
Doctrine 

The attenuation doctrine provides that evidence may be
admitted at trial if the connection between the initial illegality and the
means through which the evidence was secured is so attenuated as to dissipate
the taint.  See Taylor v. Alabama,
457 U.S. 687, 690 (1982).  In determining
whether the taint infecting the evidence obtained after an illegal arrest is
sufficiently attenuated to permit the use of the evidence at trial, the United
States Supreme Court has identified the following factors to be considered:








(1)  whether Miranda warnings were given;

(2)  the temporal proximity of the arrest and the
confession;

(3)  the presence of intervening circumstances;
and

(4)  the purpose and flagrance of the official
misconduct.

 

Self v. State, 709 S.W.2d 662,
666 (Tex. Crim. App. 1986) (citing Brown v. Illinois, 422 U.S.590, 604B05 (1975)).  This four-part test assures Athat the State
cannot violate the Fourth Amendment with impunity by washing its hands in the
procedural waters of the Fifth Amendment.@  Bell v. State, 724 S.W.2d 780, 787
(Tex. Crim. App. 1986).     

Appellant gave two confessions while he was illegally
detained.  Therefore, we will examine
each confession separately to determine whether the taint on the evidence was
sufficiently attenuated.

1.  First Statement

Miranda Warnings

Repeated warnings alone are not enough to purge the taint
of an otherwise illegal arrest.  Bell,
724 S.W.2d at 788.  With respect to the
written statement, the trial court=s findings of fact
and the record reflect that appellant received the Miranda warnings at
least three times prior to making his written statement.  Appellant was advised of his Miranda rights
when he was taken into custody at his home in Bay City, Texas.  Appellant was told of his rights a second
time after being transported from the Brazoria County Jail to the Brazoria
County Sheriff=s Office in Angleton, Texas.  Appellant was again read his Miranda rights
a third time in the confession room. 
Appellant waived his rights and gave the confession.  After the confession was written, appellant
was read the Miranda warnings from the form another time.  After appellant read his confession, he wrote
his initials in the space provided, signifying he understood his rights, and
signed the confession.  This factor
clearly favors of the State.

 








Temporal Proximity

Temporal proximity of the arrest and the
confession has been described as an Aambiguous@ factor and one
that is Agenerally not a
strong determining factor per se.@  Self, 709 S.W.2d at 666; cf.
Dunaway v. New York, 442 U.S. 200, 221 (1979) (Stevens, J., concurring)
(stating that even an immediate post-arrest confession may have been motivated
by a pre-arrest event).  Nevertheless,
when the time between the arrest and confession is short and there are no
significant intervening circumstances, a court may infer lack of time for
reflection.  Bell, 724 S.W.2d at
788B89 (finding
appellant=s first confession inadmissable when made
within one-and-a-half to three hours of his illegal arrest and without
significant intervening circumstances). 
In this case, appellant was arrested at his home by Investigator
Kinchloe sometime between 9:30 p.m. and 10:00 p.m. on January 15, 2003, and
brought to the Brazoria County Jail. 
Investigators Henson and Foreman picked appellant up at the jail and brought
him to the Brazoria County Sheriff=s Department.  The investigators interviewed appellant for
approximately fifteen to twenty minutes before taking him into an office to
take his statement.  Appellant began
making his written statement at 11:55 p.m. and finished it at 12:35 a.m. on
January 16.  From the time appellant was
arrested until the time he began making his written statement, approximately
two to two-and-a-half hours had elapsed. 
This second factor tends to favor appellant.[5]     

Intervening Circumstances








An event or circumstance need not actually
occur after the arrest, but rather it must manifest itself so as to
significantly intervene and thus attenuate the taint of an illegal arrest.  Foster v. State, 677 S.W.2d 507, 509
(Tex. Crim. App. 1984).  Significant
intervening circumstances include an appearance before a magistrate,[6]
termination of the illegal custody,[7]
consultation with counsel,[8]
voluntary statement not made in response to police interrogation, consultation
with parents,[9]
and the procurement of a valid arrest warrant before the confession.[10]  Bell, 724 S.W.2d at 789 n. 5 &
791; see also Dunn v. State, 951 S.W.2d 478, 482 (Tex. Crim. App.
1997) (Mansfield, J., concurring) (finding an intervening circumstance when
co-defendant=s confession implicated appellant in the
murder); Wicker, 667 S.W.2d at 141 (finding an intervening circumstance
when defendant was allowed to consult with his psychiatrist).  In the instant case, there was no such
significant intervening circumstance in the State=s favor.  See Self, 709 S.W.2d at 667 (stating
that no intervening circumstances in favor of the State appears to fall on
appellant=s side). 
However, there was one event that intervened in appellant=s favor between
his arrest and his first written confession. 
Appellant was confronted with a small shovel that apparently had been
used to dig a grave.  See Farmah,
883 S.W.2d at 679 (finding that detective=s false statement
to appellant that complainant identified him was an intervening circumstance in
favor of appellant); Bell, 724 S.W.2d at 789 (finding that appellant=s consent to
search, the finding of evidence, and appellant=s confrontation
with the evidence were intervening circumstances between the arrest and
confession in favor of appellant). 
Although the sequence of events do not flow directly from the arrest as
they do in Bell, this third factor falls in appellant=s favor.            

Official Misconduct








Finally, we must look to the purpose and
flagrancy of the official misconduct.  AAll Fourth
Amendment violations are, by constitutional definition, >unreasonable,= but practical
differences between violations should dictate different outcomes.  The point at which the taint can be said to
have dissipated should be related, in the absence of other controlling
circumstances, to the nature of that taint.@  Bell, 724 S.W.2d at 789 (quoting Brown,
422 U.S. at 610 (Powell, J., concurring in part)).  The purpose and flagrancy of the police
conduct may be the most important factor of the four.  Self, 709 S.W.2d at 668.  The Court of Criminal Appeals has found
official misconduct when the arrest: (1) was without probable cause;[11]
(2) was calculated to cause surprise, fright, and confusion;[12]
and (3) was conducted purely in hope that something would turn up.[13]  We find this factor weighs in favor of
appellant, although we do not believe the official misconduct was
flagrant.        

Summary








In summary, the temporal proximity and
intervening circumstances factors weigh heavily against admission of appellant=s first
confession.  The repeated Miranda warnings
do not significantly affect this conclusion. 
The immediate fruits of appellant=s arrest - his
first confession - were tainted and should not have been admitted into evidence
at trial.  We find the State has not met
its burden of proof to show the first confession was obtained by means
sufficiently distinguishable from the illegal arrest to purge it of the primary
taint.  See Bell,  724 S.W.2d at 789 (finding appellant=s first confession
inadmissable when made within one-and-a-half to three hours of his illegal
arrest and without significant intervening circumstances).  The first confession was inadmissable and it
was error to deny the motion to suppress appellant=s written
statement.                  

2.  Second
Statement

We now turn to the admissibility of
appellant=s second confession, which is a videotaped
oral confession.  Again, the factors
concerning admissibility of evidence following an illegal arrest are: (1) the
giving of Miranda warnings; (2) the temporal proximity of the arrest and
the confession; (3) the presence of intervening circumstances; and (4) the
purpose and flagrancy of the official misconduct.  Brown, 422 U.S. at 604B05. 

Miranda Warnings

After appellant=s first confession
and before his second confession, appellant had been read his Miranda rights
three times.  The first was during an
arraignment hearing before a magistrate, the second was before appellant led
officers to the location of the body, and the third was on the videotape before
his second confession.  This factor
clearly weighs in favor of the State.       


Temporal Proximity








Before appellant=s second
confession, he had been in custody for more than thirteen hours.[14]  Appellant had been in custody overnight with
time to rest and reflect.  See Dunn,
951 S.W.2d at 482 (Mansfield, J., concurring) (stating several hours was
sufficient time to reflect and to consider the consequences of confessing); Bell,
724 S.W.2d at 791 (stating  before
appellant=s second confession, he had been in
custody over a day, with time to eat, rest, and reflect); see also Hankins,
132 S.W.3d at 390 (stating nine and one-half hours time between appellant=s arrest and
confession is not so long that it becomes a particularly weighty factor for the
State, but it is not so little that it favors appellant).  Although somewhat of a close question, this
factor tends to favor the State.          


Intervening Circumstances

Unlike the first statement, significant
intervening circumstances occurred between the arrest and initial confession on
the night of January 15th and the second confession the morning of
January 16th.  The most significant
intervening factor is that appellant appeared before a magistrate.  After his arraignment, upon an investigator=s request,
appellant agreed to show detectives the exact location of the body.  Appellant stated he already knew his rights
from the night before and from the arraignment, but the investigator repeated
them again.  Appellant then led
detectives to the location of the body and remained on the scene until officers
confirmed  the location was correct.  After confirming the body=s location,
appellant returned to the Sheriff=s office and gave
his second statement on videotape.  Given
the intervening circumstance that appellant was taken before a judge for
arraignment, we find this third factor weighs in the State=s favor.  See Hankins, 132 S.W.3d at 390
(stating that the most important intervening circumstance was appellant=s
arraignment).     

Official Misconduct                  








As previously stated, the Court of
Criminal Appeals has found official misconduct when the arrest: (1) was without
probable cause;[15]
(2) was calculated to cause surprise, fright, and confusion;[16]
and (3) was conducted purely in hope that something would turn up.[17]  When the official misconduct is flagrantly
abusive, the clearest indications of attenuation should be required.  Bell, 724 S.W.2d at 789.    








We have already held the trial court
committed error in finding there was a valid warrant supported by an affidavit
establishing probable cause.  The record
contains little elaboration on the issue because the State failed to provide
sufficient facts to support an affirmative finding of probable cause.[18]  In Bell, the Court of Criminal Appeals
stated official misconduct is flagrant when the police, in making an arrest,
rely on factors which are so lacking in indicia of probable cause as to render
belief in their existence entirely unreasonable.  724 S.W.2d at 789.  In the instant case, although there was
misconduct, we find that it was not flagrantly abusive because the factors in
making appellant=s arrest were not so lacking in indicia of
probable cause as to render belief in their existence entirely
unreasonable.  In Ussery, the
appellant called the police to a murder scene and brought attention to himself
by making inconsistent statements.  651
S.W.2d at 770.  The Court of Criminal
Appeals found that although officers may have had reasonable or articulable
suspicion that appellant was connected with the commission of the crime, they
did not have probable cause to arrest.  Id. at 770B71.  The Court of Criminal Appeals stated that A[w]hile we decline
to condemn the officers= conduct as flagrant, the purpose and
impropriety of their acts are clear.@  Id. at 771.  Like the Ussery court, we conclude
there was un-excused official misconduct here, but it was not flagrant.

The officers= conduct in
arresting appellant was not calculated to cause surprise, fright, or
confusion.  Although appellant was
arrested at night, the other facts of this case are not similar to Duncan or
Green.  In Duncan,
appellant was awakened at 3:00 a.m. for interrogation purposes and was
interrogated until 6:00 a.m., when she signed the confession. 639 S.W.2d at
318.  In Green, appellant was roused from his sleep
in the middle of the night by officers pointing shotguns in his direction, then
led into the freezing weather with no coat, outer clothing, or shoes.  Green, 615 S.W.2d at 708B09.  In the instant case, investigators called
appellant on the telephone and advised him they were looking for him and needed
to speak with him.  Appellant told the
investigators he would call them when he arrived home.  When appellant arrived at his house, he
called the investigators and said he would wait for them on his front
porch.  Shortly thereafter, appellant was
arrested by Investigator Kinchloe. 
Unlike Duncan and Green, this case does not present a
situation in which the arrest was calculated to cause surprise, fright, or
confusion.     








There is no suggestion by appellant or the
record that appellant=s arrest was conducted by officers in hope
that something would just Aturn up.@  In Beasley, the court found appeallant=s arrest was made
with Apurpose and
flagrancy@ when he was arrested without probable
cause and on the basis of nothing more than a missing person report.  674 S.W.2d at 768.  The court found the officers had set out on a
patently investigatory mission, and on the basis of nothing more, detained
appellant with the apparent hope that Asomething would
turn up.@  Id. at 768B69.  In the instant case, nothing in the record
suggests appellant was arrested in hope that something would turn up.  Appellant was arrested after his wife told
investigators that he was responsible for the murder.  Officers already had discovered the victim=s abandoned car
and a shovel they suspected was used to bury the victim=s body.  Although we do not condone the officers= actions, their conduct
was not a flagrant fishing expedition for incriminating statements.

We find the final factor regarding
official misconduct weighs in favor of the appellant.  However, we also find the official misconduct
was not flagrantly abusive.   

Summary

After reviewing all of the factors, we
find that before his second confession appellant received repeated Miranda warnings,
was able to rest and reflect over the course of a night and the following
morning on the consequences of a confession, and was arraigned before a judge
and apprised of his rights.  We hold
these facts, of which arraignment is the most important, broke the nexus
between the illegal arrest and appellant=s second
confession.  These intervening
circumstances attenuated the taint of the illegal arrest on the second
confession, rendering it admissible during appellant=s trial.   

Appellant=s second
confession is essentially the same as his first confession and more
detailed.  ASince the second
confession is more complete with details and it was properly admitted in
evidence, the admission of the first confession is not reversible error.@  Bell, 724 S.W.2d at 793 (quoting Daniel
v. State, 668 S.W.2d 390, 392 (Tex. Crim. App. 1984)); see Tex. R. App. P. 44.2.       

Conclusion

We conclude, appellant=s initial arrest
was without a warrant based on probable cause. 
Accordingly, the first confession was tainted and the trial court erred
in admitting the confession during trial. 
However, intervening circumstances between the illegal arrest and the
second confession, including appellant=s appearance
before a magistrate and his receipt of additional Miranda warnings,
severed the causal relationship between the illegal arrest and the second
confession, rendering it admissible at trial. 









We overrule appellant=s sole issue and
affirm the judgment of the trial court.   


    

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment
rendered and Opinion filed March 3, 2005.

Panel
consists of Justices Anderson, Hudson, and Frost.

Publish
C Tex. R. App. P. 47.2(b).

 

 











[1]  Appellant is
the son-in-law of the victim and, coincidently, shares the same surname with
the victim and his family. 





[2]  The State
contends it never developed testimony regarding the adequacy of probable cause
because of appellant=s purported lack of specificity in his objections. 





[3]  One of the
investigator=s testimony concerned only the details concerning a
videotaped statement and is not relevant to the issue on appeal. 





[4]  Even if probable cause to arrest
appellant existed, the arrest was still unlawful because it was not authorized
by articles 14.01B.04 of the Texas Code of Criminal
Procedure.  Warrantless arrests in Texas are authorized by statute
and only permitted in limited circumstances. 
See Tex. Code Crim. Proc.
Ann. art. 14.03 (Vernon Supp. 2004); Amores v. State, 816 S.W.2d
407, 413 (Tex. Crim. App. 1991).  The
State bears the burden to prove that a warrantless arrest falls within one of
those exceptions.  Amores, 816
S.W.2d at 413.  No such showing was made
here.   





[5]  The Court of
Criminal Appeals has suggested this second factor tends to weigh in appellant=s favor with similar time frames.  See e.g., Farmah v. State, 883
S.W.2d 674, 679 (Tex. Crim. App. 1994) (approximately four hours);  Maximer v. State, 753 S.W.2d 151, 156
(Tex. Crim. App. 1988) (less than two hours); Bell, 724 S.W.2d at 788
(first confession: one-and-a-half to three hours); Self, 709 S.W.2d at
666 (approximately two hours); Ussery v. State, 651 S.W.2d 767, 771 (Tex.
Crim. App. 1983) (one to one-and-a-half hours).    





[6]  See Hankins
v. State; 132 S.W.3d 380, 390 (Tex. Crim. App. 2004); Jones, 833
S.W.2d at 125; Barber v. State, 737 S.W.2d 824, 832 (Tex. Crim. App.
1987). 





[7]  See Maximer,
753 S.W.2d at 156 (finding intervening circumstances when appellant had been
released from custody and informed he was free to leave, however, he chose to
stay because he Awanted to get everything out in the open@).





[8]  See Wicker
v. State, 667 S.W.2d 137, 141 (Tex. Crim. App. 1984).





[9]  See Wicker,
667 S.W.2d at 141.





[10]  See Little
v. State, 758 S.W.2d 551, 566 (Tex. Crim. App. 1988) (finding intervening
circumstances when police made a valid arrest on a formal charge shortly after
the illegal arrest and detention, which transformed the arrest into a legal
one).  





[11]  See Farmah,
883 S.W.2d at 679 (finding the illegality of the arrest weighed heavily in
appellant=s favor when the officers lacked probable cause to
arrest because the only connection between the appellant and the offense was
the possession of the car and his race, and noting, this was not a situation
with some technical error that invalidated the arrest); Townsley v. State,
652 S.W.2d 791, 797B98 (Tex. Crim. App. 1983) (finding appellant was
initially detained without probable cause, and had probable cause not been
established by evidence independent from the illegal detention before appellant
confessed, the court would have been forced to look at the full range of police
activity occurring between appellant=s
illegal detention and first written confession). 





[12]  See Duncan
v. State, 639 S.W.2d 314, 316B18 (Tex.
Crim. App. 1982) (finding flagrant misconduct when appellant was taken from his
bed at 3:00 a.m. for interrogation purposes and was interrogated until 6:00
a.m. when she signed the confession); Green v. State, 615 S.W.2d 700,
708B09 (Tex. Crim. App. 1980) (finding flagrant misconduct
when appellant was roused from his sleep in the middle of the night with
officers pointing shotguns in his direction, leading him into the freezing
weather with no coat, outer clothing, or shoes).   





[13]  See Beasley
v. State, 674 S.W.2d 762, 768B69 (Tex.
Crim. App. 1982). 





[14]  Appellant was
taken into custody at approximately 9:30 p.m. to 10:00 p.m. on January 15, and
the videotaped confession began the next day, January 16, at 11:41 a.m.





[15]  See Farmah,
883 S.W.2d at 679 (finding the illegality of the arrest weighed heavily in
appellant=s favor when officers lacked probable cause to arrest
because the only connection between appellant and the offense was possession of
the car and his race, and noting, this was not a situation with some technical
error that invalidated the arrest); Townsley, 652 S.W.2d at 797B98. 





[16]  See Duncan,
639 S.W.2d at 316B18 (finding flagrant misconduct when appellant was
taken from her bed at 3:00 a.m. for interrogation purposes and was interrogated
until 6:00 a.m. when she signed the confession); Green, 615 S.W.2d at
708B09 (finding flagrant misconduct when appellant was
roused from his sleep in the middle of the night with officers pointing
shotguns in his direction, leading him into the freezing weather with no coat,
outer clothing or shoes).   





[17]  See Beasley,
674 S.W.2d at 768B69.  





[18]  Based on the
evidence introduced at the suppression hearing, the officers may have had
information providing them with probable cause to arrest appellant, but that
information was not in a probable cause affidavit.  Probable cause exists where the facts and
circumstances within the officer=s
knowledge and of which he has reasonably trustworthy information are sufficient
in themselves to warrant a person of reasonable caution in the belief that a
particular person has committed or is committing an offense.  Amores, 816 S.W.2d at 413.  In determining whether an officer has
probable cause for an arrest, Texas courts apply the
totality-of-the-circumstances analysis.  Tribble.
v. State, 792 S.W.2d 280, 284 (Tex. App.CHouston
[1st Dist.] 1990, no pet.).  In analyzing
whether an officer had probable cause to arrest when receiving information from
a crime victim or witness, the focus does not appear to be on the validity or
accuracy of the information, but on whether the officer was justified in
relying on the statement.  Mungia v.
State, 911 S.W.2d 164 , 167 (Tex. App.CCorpus
Christi 1995, no pet.).  Indeed, the
modern position is that any person purporting to be a crime victim or witness
may be presumed reliable, though the police must remain alert to the existence
of any circumstances which would make that presumption inoperative in a
particular case.  Id. (citing W.
LaFave, Search and Seizure: A Treatise on the Fourth Amendment, ' 3.4(a), p.719 (West 1987)).